Richard M. RIVERS, Appellant,

v.

Hershel W. GOBER, Acting Secretary of Veterans Affairs, Appellee.

No. 96–154.

United States Court of Veterans Appeals.

Argued Sept. 5, 1997.

Decided Nov. 3, 1997.

Patrick J. Tracy, Arlington, VA, for appellant.

Michael A. Leonard, with whom Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; and R. Randall Campbell, Deputy Assistant General Counsel, Washington, DC, were on the brief for appellee.

Before KRAMER, FARLEY, and IVERS, Judges.

FARLEY, Judge:

The appellant, Richard M. Rivers, appeals from a January 30, 1996, decision of the Board of Veterans' Appeals (BVA or Board) which determined that a March 22, 1973, rating decision denying entitlement to service connection for a herniated lumbar disc and the residuals of a lumbar laminectomy did not contain clear and unmistakable error (CUE). The Board also denied an increased evaluation for a herniated lumbar disc and residuals of a lumbar laminectomy, currently evaluated as 40% disabling. On January 28, 1997, the Court granted the parties' joint motion for remand on the issue of increased evaluation for a herniated lumbar disc and the residuals of a lumbar laminectomy. Therefore, the only issue remaining before this Court is whether there was CUE in the 1973 rating decision. The appellant argued on appeal that both the March 1973 decision and a subsequent August 1973 rating decision granting a non-service-connected pension were the product of CUE. For the reasons that follow, the Court will affirm the BVA's determination that the March 1973 rating decision did not contain CUE and dismiss the appeal with respect to the issue of whether the August 1973 contained CUE.

## I. BACKGROUND

The appellant served on active duty from May 1944 to March 1945. Record (R.) at 66. He was medically discharged on March 28, 1945, due to a left hip and leg disability. R. at 39. During a medical examination in March 1945, the veteran reported that he had had pain in his left leg and hip since 1942 when he was attacked by a boar. R. at 63. His hip and leg disability was therefore determined to have existed prior to service. R. at 64. Service medical records reflect that the appellant also had complained of pain radiating across the back, instability of the back, limitation of all back muscles on extension, and subluxation of the left hip leading to pain in the back and down the left leg. R. at 61–63.

In April 1945 the veteran applied for service-connected benefits for a hip and back disability "aggravated by service." R. at 84.

The regional office (RO) granted service connection for malaria, but denied service connection for a right recurrent hip disorder as a preexisting condition not incurred or aggravated by service. R. at 88. The veteran later submitted "buddy statements" from Anthony Nunes and Joseph Romero. R. at 92, 94. Mr. Nunes stated that he recalled the veteran telling him while they were serving together on the U.S.S. Elokomin in December 1944 that he had just fallen from a ladder and that the veteran had shown him bruises on his legs and back. R. at 92. Mr. Romero reported that while on night duty in December 1944 he had heard the veteran fall, went out on deck, saw the veteran at the bottom of a ladder on the deck below, asked him what had happened, and that the veteran told him he had fallen from the ladder and hurt his back. R. at 94.

In December 1972, Dr. K.E. Vogel, a private physician, reported that in November 1972 the appellant underwent a lumbar laminectomy with excision of the herniated lumbar disc. R. at 96. In February 1973 the appellant attempted to reopen his claim for a back disorder. R. at 98. On March 22, 1973, the RO denied service connection for a herniated lumbar disc because "s[er]v[i]c[e] clinical records [were] negative for complaints or treatment of a back condition and [the] report of med[ical] survey show[ed that the] vet[eran] was discharged with a [diagnosis] of dislocation chronic recurrent [right] hip E[xisted]P[rior]T[o]S[ervice]." R. at 101–02.

In April 1973, the RO received an Income—Net Worth and Employment Statement, which was apparently considered an application for pension benefits. Supplemental (Suppl.) R. at 1–2. In May 1973, the appellant filed a Notice of Disagreement with the March 1973 rating decision. Suppl. R. at 4. In a VA Compensation and Pension examination conducted in July 1973, Dr. Arthur Kellnor opined that the appellant's condition was misdiagnosed at the time of the injury and that the original injury was to the back rather than to the hip. R. at 109. The RO issued a rating decision on August 16, 1973, awarding the veteran a non-service-connected pension and assigned a 60% disability evaluation. R. at 133–34. That rating

decision identified July 3, 1973, as the date of the veteran's last VA examination. On the same date, the RO issued a statement of the case regarding the March 1973 rating decision. R. at 122. In September 1973, the appellant submitted a statement that he wished to withdraw his appeal and further requested that his claim be evaluated for a non-service-connected pension. R. at 129–31.

The veteran attempted to reopen his claim for service connection for a back condition in December 1990. R. at 249. His claim was denied for failure to submit new and material evidence in August 1991 (R. at 251, 260, 263) and again in July 1992 (R. at 372). The veteran filed a timely appeal to the BVA in August 1992. R. at 374, 384. On appeal his representative raised the issue of CUE in the August 1973 rating decision. R. at 388, 391–92.

The Board remanded the veteran's claim to the RO to obtain additional VA, private, and service medical records; to obtain a medical opinion as to the etiology of the veteran's back condition; and to consider whether there was CUE in the *March 1973* rating decision. R. at 394. In January 1995, Dr. Eugene Bass opined in a Compensation and Pension Examination Report that it was "more likely than not that [the veteran's] back problems began secondary to the fall while in service as Dr. Kilner [sic] previously indicated." R. at 507. On remand, the RO found that the *March 1973* decision did not contain CUE, but that new and material evidence had been submitted to reopen the veteran's claim for service connection for his back condition and granted him service connection. R. at 529.

In the decision here on appeal the Board concluded that the appellant had not shown that the RO failed to apply an applicable existing law or statute, or that the RO's decision was arbitrary and capricious, and therefore the *March 1973* rating decision did not contain CUE. The Board noted that the conclusions of Dr. Kellnor were not of record at the time of the March 1973 decision. The BVA decision did not address whether the August 1973 decision contained CUE.

## II. ANALYSIS

■ "Previous determinations which are final and binding ... will be accepted as correct in the absence of clear and unmistakable error." 38 C.F.R. § 3.105(A) (1996). To establish a valid CUE claim the claimant must show that "[e]ither the correct facts, as they were known at the time, were not before the adjudicator or the statutory or regulatory provisions extant at the time were incorrectly applied." *Russell v. Principi,* 3 Vet.App. 310, 313 (1992) (en banc). It is not enough for the appellant to merely disagree as to how the facts were weighed or evaluated. *Id.* The standard for this Court's review of a BVA decision on the existence of CUE in a final RO adjudication is limited to whether the BVA decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law...." 38 U.S.C. § 7261(a)(3)(A); *Russell,* 3 Vet.App. at 315. This Court may review claims of CUE in prior final decisions only when such claims have been properly raised to and adjudicated by the BVA. "The necessary jurisdictional 'hook' for this Court to act is a decision of the BVA on the specific issue of 'clear and unmistakable error.'" *Id.*

In *Myers v. Derwinski,* 1 Vet.App. 127, 129 (1991), the Court held that "the BVA must review all issues which are reasonably raised from a liberal reading of the appellant's substantive appeal." *See also Godfrey v. Brown,* 7 Vet.App. 398, 410 (1995). In *EF v. Derwinski,* 1 Vet.App. 324, 326 (1991), the Court further held that "there is nothing magical about the statements actually on the [substantive appeal] form, given the VA's non-adversarial process. The VA's statutory 'duty to assist' must extend this liberal reading to include issues raised in all documents or oral testimony submitted prior to the BVA decision."

### A. March 1973 Rating Decision

■ The Secretary argues that the appellant's claim that March 1973 rating decision is the product of CUE should be dismissed because of the absence of legal merit or the lack of entitlement under the law. *Sabonis v. Brown,* 6 Vet.App. 426 (1994). We agree. The facts *as they were known at the time* were before the RO (Dr. Kellnor's VA examination was not performed until after the March 1973 decision), and the appellant has not alleged that the statutory or regulatory

provisions extant at the time were incorrectly applied. *Russell, supra.* Accordingly, the Court will affirm the Board's denial of the appellant's claim of CUE in the March 1973 rating decision. *Sabonis,* 6 Vet.App. at 430.

### B. August 1973 Rating Decision

 The Secretary argued that the appellant's claim that the August 1973 rating decision was the product of CUE also lacks legal merit. The Secretary makes this argument notwithstanding the fact that he "agrees with [the a]ppellant that the BVA misidentified the issue as being whether the March 1973 rather than the August 1973 *Rating Decision* was the product of CUE." Secretary's Brief (Br.) at 10. The appellant had specifically raised the issue of CUE in the August 1973 decision in his 1992 appeal to the BVA (R. at 388, 391–92); however, the Board mischaracterized the issue, remanding the case for consideration of CUE in the March 1973 decision (R. at 394).

After the RO found that the March 1973 decision did not contain CUE (R. at 529), the veteran appealed that decision to the BVA, but did not specifically raise the issue of CUE in the August 1973 decision again (*see* R. at 541, 554 (Statement of Accredited Representative identified the issues on appeal as (1) CUE in March 1973 decision and (2) rating of greater than 40%)). However, in an informal hearing presentation before the BVA in November 1995, while the veteran's representative continued to frame the issue as CUE in the March 1973 decision, she stated that "The August 16, 1973[,] rating decision amended the March 22, 1973[,] rating decision.... This organization contends that the March 22, 1973 rating decision was [CUE]. The evidence was of record at the time of the amended decision on August 16, 1973." R. at 568. The Court finds that the issue of CUE in the August 16, 1973, decision was "reasonably raised" by the appellant. *Myers, supra; see also Fugo v. Brown,* 6 Vet.App. 40, 43 (1993); *Crippen v. Brown,* 9 Vet.App. 412, 420 (1996) (Appellant raised CUE claim with requisite specificity because he argued for an earlier effective date for his award of service connection and asserted that evidence compelling such award was of record at the time of three earlier RO decisions.). The appellant, therefore, was enti-

tled to a decision on the issue of CUE in the August 1973 decision. *Myers, supra.*

The Secretary argued the August 1973 decision did not contain CUE because, had the July 1973 examination been considered, it would not have manifestly changed the outcome on the merits. *Russell, supra.* In *Russell* this Court remanded the appellant's claim to the BVA to determine whether the error made by the RO was "'clear and unmistakable error' under 38 C.F.R. § 3.105(a)." *Id.; see also Smith v. Brown,* 35 F.3d 1516, 1519 (Fed.Cir.1994) ("*Russell* thus stands only for the unexceptionable proposition that the Board must render a decision on allegations of CUE committed by an agency of original jurisdiction."). Accordingly, the question of whether the August 1973 decision was the product of CUE is a factual determination which this Court cannot decide in the first instance. *Russell,* 3 Vet.App. at 320.

At oral argument the Secretary argued that, even if the Board's failure to consider the issue of CUE in the August 1973 rating decision was error, that error was harmless because the appellant "clearly" could not have prevailed on that claim. In support of this position, the Secretary relied upon this Court's decisions in *Wamhoff v. Brown,* 8 Vet.App. 517 (1996); *Degmetich v. Brown,* 8 Vet.App. 208 (1995); and *Damrel v. Brown,* 6 Vet.App. 242, 246 (1994). In both *Wamhoff* and *Degmetich* the Court found that the Board's application of the incorrect regulation in its decisions regarding the allegations of CUE in the earlier RO decisions was harmless error. In the case at hand, however, the BVA completely failed to consider the veteran's CUE claim and therefore, *Wamhoff* and *Degmetich* provide little guidance in this appeal.

In *Damrel,* the Court found the Board's failure to consider the appellant's CUE claim to be harmless error *because,* even if the Board had held in her favor, she would have been precluded, as a matter of law, from collecting the benefits sought. 6 Vet.App. at 246. Thus, applying the same analysis to this appeal, we must consider whether, viewing the facts most favorably to the appellant, the appellant still could not prevail as a

matter of law. The potential CUE in the August 1973 claim was the RO's failure to consider the July 1973 examination and, in light of that evidence, evaluate the claim not only for a non-service-connected pension, but for service connection as well. *See* 38 C.F.R. § 3.151(a) ("A claim by a veteran for compensation may be considered to be a claim for pension; and a claim for pension may be considered a claim for compensation. The greater benefit will be awarded, unless the claimant specifically elects the lesser benefit."); *see also Stewart v. Brown,* 10 Vet.App. 15, 18 (1997) (Although the "Secretary is not automatically required to treat every compensation claim as also being a pension claim and vise versa … the Secretary has to exercise his discretion under the regulation in accordance with the contents of the application and the evidence in support of it."). The Secretary conceded at oral argument that the RO was aware of the July 1973 examination when it rendered its August 1973 decision. The Secretary argued that although § 3.151(a) requires the RO to consider a pension claim as a service connection claim, the regulation does not require that the RO consider the pension and service connection claims *simultaneously,* and that had the veteran not withdrawn his service connection claim in September 1973, the RO *would have* considered the July 1973 examination with respect to the issue of service connection.

This Court cannot base its decision on speculation as to what the RO *would have* done with respect to a claim over 20 years ago. We must focus only upon what the RO was required to do, and whether it satisfied those requirements. The July 1973 examination, which consisted of evidence favorable to the veteran's claim for service-connected benefits, was before the RO when it rendered its August decision. Had the RO dealt with service connection at that time, as the Secretary admits, the evidence would have been considered new "and probably material" evidence sufficient to warrant reopening of the claim. *See* Secretary's Br. at 13. The appellant's withdrawal of his claim for service connection was not received by the RO until September 13, 1973. R. at 130; *see also* Secretary's Br. at 12. Thus, if the Board were to decide the issues of whether it was

CUE for the RO not to consider the July 1973 examination and whether a claim of service connection should have been adjudicated in August 1973 in the appellant's favor, there is nothing that would legally preclude the Board's ultimate determination that, but for the RO's CUE in the August 1973 decision, the result of the claim on the merits would have been manifestly different (i.e. the RO would have considered and awarded service connection). Therefore, unlike in the *Damrel* case, we could not conclude, as a matter of law, that the appellant would not have prevailed on his CUE claim had the Board considered it.

Because neither the RO nor the BVA ever issued a decision regarding CUE in the August 1973 rating decision, the claim is still pending and the appellant is entitled to a decision on that issue. *See Tablazon v. Brown,* 8 Vet.App. 359, 361 (1995); *see also* 38 U.S.C. § 7266(a). The Court presumes that the Secretary will act expeditiously in that regard. *Cf.* Veterans' Benefits Improvements Act, Pub.L. No. 103–446, § 302, 108 Stat. 4645, 4658 (1994) (found at 38 U.S.C. § 5101 note) (requiring the Secretary to provide "expeditious treatment" for claims "remanded" by the BVA or this Court).

### III. CONCLUSION

On consideration of the foregoing, the Court finds that the Board's determination that the March 22, 1973, rating decision did not contain CUE was in accordance with law, and was not arbitrary, capricious, or an abuse of its discretion. *See Russell, supra.* The Court also finds that the appellant reasonably raised the issue of whether there was CUE in the August 16, 1973, rating decision, and is entitled to an adjudication of that claim. Accordingly, the Board's January 30, 1996, decision, to the extent it determined that the March 22, 1973, rating decision did not contain CUE, is AFFIRMED and the appeal with respect to CUE in the August 16, 1973, decision is DISMISSED.