Angeline P. CARPENTER, Appellant,

v.

Togo D. WEST, Jr., Acting Secretary of Veterans Affairs, Appellee.

No. 96–95.

United States Court of Veterans Appeals.

Argued April 17, 1997.

Decided March 24, 1998.

Stephen L. Purcell, Washington, DC, for appellant.

Richard Mayerick, with whom Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; and Thomas A. McLaughlin, Deputy Assistant General Counsel, Washington, DC, on the brief for appellee.

Before KRAMER, IVERS, and STEINBERG, Judges.

STEINBERG, Judge, filed the opinion of the Court.

IVERS, Judge, filed the concurring opinion.

STEINBERG, Judge:

The appellant, Angeline P. Carpenter, the widow of World War II veteran Bernard W. Carpenter, appeals an October 20, 1995, decision of the Board of Veterans' Appeals (BVA or Board) that (1) found that a 1983 Veterans' Administration (now Department of Veterans Affairs) (VA) regional office (RO) decision that the appellant asserted had committed clear and unmistakable error (CUE) was subsumed in a March 1984 BVA decision, (2) concluded that the criteria for review of an RO decision based on CUE had not been met, and (3) therefore denied the

appellant's claim for dependency and indemnity compensation (DIC) under 38 U.S.C. § 1318. Record (R.) at 5–7. The appellant filed a brief and a reply brief, and the Secretary filed a brief; after oral argument, the Court, on May 2, 1997, ordered supplemental briefing, and the Secretary and the appellant each filed a response. This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). For the reasons that follow, the Court will vacate the BVA decision and remand the matter for readjudication.

## I. Facts

The veteran served on active duty in the U.S. Army from October 1941 to November 1945. R. at 59. A December 1945 VARO decision granted him a 30% rating for a service-incurred "anxiety state". R. at 61. That rating was reduced to 10% by a March 1947 RO decision (R. at 63) and to 0% by an April 1952 RO decision (R. at 65). In April 1974, an RO decision restored the rating to 30% (R. at 68), and a June 1975 RO decision increased that rating to 70% (R. at 70). Ultimately, a July 1975 RO decision granted total disability based upon individual unemployability (TDIU), effective from January 1975. R. at 161.

The TDIU rating remained in effect until a February 1983 RO decision concluded, apparently under 38 C.F.R. § 3.105(e) (see R. at 90 (Statement of the Case (SOC))), that the July 1975 RO TDIU award had been the product of CUE and, accordingly, terminated TDIU benefits effective on May 1, 1983. R. at 80–81. That decision concluded:

Rating decision of 7–10–75 is held to be in clear and unmistakable error in the granting of entitlement to individual unemployability benefits without developing further regarding the veteran's disability retirement examination as there was of record a severe non[-]service[-]connected disability.

R. at 81; see also R. at 91. On appeal to the Board, the veteran's service representative in his February 1984 written presentation to the Board expressly "disagree[d] with the local rating agency's most recent determination regarding [CUE in the] rating decision of June 3, 1975" (R. at 104) and argued that "the previous rating decision did not consti-

tute [CUE] in granting the total disability evaluation" (R. at 105). A March 1984 BVA decision confirmed the 1983 RO decision terminating the TDIU rating. The Board there concluded that impairment of the veteran's ability to work was "encompassed by the 70 percent disability evaluation" and that "the veteran's service-connected disability, in itself, is not of sufficient severity as to preclude him from obtaining and retaining some relatively nonstressful form of substantially gainful employment, consistent with his high school education and varied prior work experience." R. at 112. The Board's decision did not specifically address whether the 1983 RO decision had correctly determined that the 1975 RO decision had been the product of CUE; instead, its conclusions of law were that (1) "[t]he schedular requirements for a disability evaluation in excess of 70 percent for generalized anxiety disorder have not been met" and (2) the "[t]he veteran is not individually unemployable by reason of service-connected disability." R. at 113.

In August 1991, the veteran died; the death certificate listed the causes of death as sepsis, due to peptic ulcer disease, due to pneumonia; a cerebral artery stroke was listed as a contributing factor in causing his death. R. at 115. Thereafter, in September 1991, the appellant filed a claim for DIC. R. at 120–23. Although her DIC claim was initially articulated as a section 1310 claim for service-connected cause of death, she eventually withdrew that claim and clarified that her application was for "section 418" (the forerunner of section 1318) DIC. *See ibid.;* R. at 125. A November 1991 RO decision denied DIC, concluding that "[t]he evidence of record does not show that at the time of the veteran's death, a total disability evaluation had been in effect for ten continuous years immediately preceding death." R. at 128. Subsequently, she raised, under 38 U.S.C. § 1318(b), the issue of CUE in the 1983 RO decision. *See* R. at 149–55. The RO denied that claim (R. at 128–29), and she appealed to the BVA by filing a timely Notice of Disagreement (NOD) (R. at 133) and VA Form 1–9 (Substantive Appeal to BVA) (R. at 144).

In the October 20, 1996, BVA decision here on appeal, the Board, relying upon the holding in *Smith (William) v. Brown,* 35 F.3d 1516 (Fed.Cir.1994), that CUE is not applicable to BVA decisions, found that the 1983 RO decision was subsumed in the 1984 BVA decision and concluded that "the appellant's claim for restoration of a total rating for the veteran's compensation retroactive to 1983 based on CUE in the February 1983 RO decision under 38 C.F.R. § 3.105(a) must be denied because of absence of legal merit and lack of entitlement under the law." R. at 6, 9–10.

## II. Analysis

When a qualifying veteran dies from a service-connected disability, the veteran's surviving spouse is eligible for DIC. *See* 38 U.S.C. § 1310; 38 C.F.R. § 3.5(a) (1997). Even if a service-connected condition did not cause or contribute to a veteran's death, the surviving spouse is entitled to receive DIC benefits "as if the veteran's death were service connected" if a veteran meets the requirements in 38 U.S.C. § 1318 and 38 C.F.R. § 3.22 (1997) as to service connection. Section 1318(b) provides for the payment of DIC, as if the cause of death were service connected, where the veteran has died under the following conditions, inter alia:

[N]ot as the result of [his or her] own willful misconduct, and [where he or she] was in receipt of or entitled to receive (or but for the receipt of retired or retirement pay was entitled to receive) compensation at the time of death for a service-connected disability that . . .

(1) was continuously rated totally disabling for a period of 10 or more years immediately preceding death. . . .

38 U.S.C. § 1318(b). The implementing regulation describes this section 1318 DIC entitlement as attaching where

[t]he veteran was in receipt of or *for any reason (including* receipt of military retired or retirement pay or correction of a rating after the veteran's death based on *clear and unmistakable error* ) was not in receipt of but *would have been entitled to* receive compensation at the time of death for a service-connected disablement that . . .

(i) Was continuously rated totally disabling by a schedular or unemployability rating for a period of 10 or more years immediately preceding death....

38 C.F.R. § 3.22(a)(2)(i) (1997) (emphasis added).

Also relevant to the disposition of the issues surrounding the appellant's claim are two parts of VA's regulation 38 C.F.R. § 3.105, which provides:

(a) ... Where evidence establishes [CUE], the prior decision will be reversed or amended. For the purpose of authorizing benefits, the rating or other adjudicative decision which constitutes a reversal of a prior decision on the grounds of [CUE] has the same effect as if the corrected decision had been made on the date of the reversed decision....

....

(e) Where the reduction in evaluation of a service-connected disability or employability status is considered warranted and the lower evaluation would result in a reduction or discontinuance of compensation payments currently being made, a rating proposing the reduction or discontinuance will be prepared setting forth all material facts and reasons. The beneficiary will be notified at his or her latest address of record of the contemplated action and furnished detailed reasons therefor, and will be given 60 days for the presentation of additional evidence.... [I]f additional evidence is not received within that period, final rating action will be taken and the award will be reduced or discontinued effective the last day of the month in which the 60-day period from the date of notice to the beneficiary of the final rating action expires.

38 C.F.R. § 3.105(a), (e) (1997). Virtually identical provisions were also in effect when the RO acted in 1983. *See* 38 C.F.R. § 3.105(a), (e) (1983). Under these provisions of § 3.105, a decision revised on the basis of CUE under paragraph (a)—that is, one authorizing benefits—results in an effective date as of the date of the decision being revised; a decision revised on the basis of paragraph (e)—that is, where an award is reduced or suspended—results in an effective

date for the reduced rating that is tied to the date of the revising decision. *Cf. Daniels v. Gober,* 10 Vet.App. 474, 480 (1997) (differentiating between paragraphs (a) and (d) of § 3.105 and quoting *Venturella v. Gober,* 10 Vet.App. 340, 342–43 (1997) (Steinberg, J., concurring)).

As to the appellant's claim under section 1318(b), the issues on appeal before this Court at the time of the Court's May 1997 briefing order can be briefly summarized as follows: (1) Whether the Board correctly concluded that the 1983 RO decision, which had found CUE (apparently under § 3.105(e), *see* R. at 90) in a 1975 RO decision awarding TDIU to the veteran and therefore revoked that TDIU award, was entirely subsumed in the 1984 BVA decision denying TDIU and thus could not itself be the subject of a § 3.105(a) CUE claim; (2) whether and to what extent the 1984 BVA decision acts as a barrier to an award of DIC pursuant to section 1318(b)'s "entitled to receive" language and 38 C.F.R. § 3.105(a); and (3) whether the Court's holding in *Green (Doris) v. Brown,* 10 Vet.App. 111 (1997), and its interpretation of the "entitled to receive" language of 38 U.S.C.A. section 1318(b) and 38 C.F.R. § 3.22(a) allow the appellant to bring a new claim not impeded by the effects of the 1984 BVA decision. In the October 1995 BVA decision on appeal, the Board decided against the appellant's DIC claim because it found that she could succeed only by a CUE claim that she could not bring. For the reasons set forth in parts II.A. and B., below, this case must now be remanded for adjudication of the appellant's section 1318 DIC claim.

### A. Subsuming of 1983 RO Decision

At the time that this case was argued before the Court, a VA claimant could bring a CUE challenge under 38 C.F.R. § 3.105(a) only as to a decision of an agency of original jurisdiction and not as to a decision of the Board. *See Smith (William),* 35 F.3d at 1527. Hence, a claim of CUE was then an attack on a final RO decision. *See Id.,* at 1526; *Duran v. Brown,* 7 Vet.App. 216, 223–24 (1994); *Talbert v. Brown,* 7 Vet.App. 352, 355 (1995). As of that time, a critical question in this case was whether the 1983 RO

decision was entirely subsumed in the 1984 BVA decision so that the Federal Circuit's *Smith* opinion would clearly preclude a CUE challenge as to any part of that RO decision.

However, since oral argument, the nature of this issue has been changed substantially by this Court's holding on June 26, 1997, that, in assessing the effect of a BVA decision other than one on direct appeal, "[w]here the BVA fails to adjudicate a claim that was reasonably raised before it, the net outcome for the [claimant] amounts to a denial of the benefit sought." *In the Matter of Fee Agreement of Smith in Case No. 90–1072*, 10 Vet.App. 311, 314 (1997), *en banc review denied*, 1997 WL 782969 (Dec. 12, 1997) (per curiam order). The effect of this *In re Smith* holding on this case is that the 1984 BVA decision—even though it can be read as having failed to address the question whether the RO had correctly found CUE under § 3.105(e) in the 1975 RO decision that had awarded TDIU benefits—is considered to have addressed that question and decided it unfavorably to the claimant because the appellant's challenge to that RO decision not only reasonably raised but expressly raised that question to the Board. *See* R. at 104–05. Hence, under *Duran v. Brown*, 7 Vet. App. at 224, the 1983 RO decision is totally subsumed in the 1984 BVA decision and thus is not itself subject to a CUE challenge.

Another recent action of note is the enactment on November 21, 1997, of Public Law 105–111 for the purpose, in part, of superseding the Federal Circuit's *Smith* holding by adding a new section 7111 to title 38 so as to make prior final BVA decisions also subject to CUE challenge. Pub.L. No. 105–111, 111 Stat. 2271 (1997). Section 1(c) of that public law makes the new section 7111 CUE claim (within the parameters of § 3.105(a) and judicial interpretations thereof) applicable to any BVA decision no matter when rendered; makes the new CUE claim expressly applicable to any claim pending in this Court on the date of the law's enactment; and makes judicial review in this Court available as to a BVA decision adjudicating such a CUE challenge to a prior BVA decision despite the absence of one basic element of this Court's

general judicial-review jurisdiction—an NOD filed as to an underlying RO adverse decision on or after November 18, 1988, *see* Veterans' Judicial Review Act, Pub.L. No. 100–687 § 402, 102 Stat. 4105, 4122 (1988) (found at 38 U.S.C. § 7251 note). Pub.L. No. 105–111, § (c)(1), (2), 111 Stat. at 2272; *see also* H.R.REP. No. 105–52, at 2–3 (1997) (bill containing exact legislative language that was ultimately enacted "would effectively codify this regulation [38 C.F.R. § 3.105(a) ], and extend the principle underlying it to BVA decisions"; CUE described in terms of Court's caselaw); S.REP. No. 105–157, at 4 (describing Federal Circuit's *Smith* holding and contravening effect of bill containing exact legislative language that was ultimately enacted and summarizing Court's caselaw on CUE); *Traynor v. Turnage*, 485 U.S. 535, 545–46, 108 S.Ct. 1372, 1380–81, 99 L.Ed.2d 618 (1988) (Supreme Court assumes that Congress was aware of VA interpretation of term when it enacted new law using same term "and that Congress intended that the term receive the same meaning for purposes of that [new] statute as it had received for purposes of other veterans' benefits statutes"). Under the new section 7111(e), a VA claimant is expressly enabled to bring a claim directly to the BVA, and not to the RO, to challenge a prior **BVA** decision on CUE grounds, 38 U.S.C. § 7111(d), (e) (1997), and new section 7111(f) provides: "A claim filed with the Secretary that requests reversal or revision of a previous Board decision due to [CUE] shall be considered to be a request to the Board under this section, and the Secretary shall promptly transmit any such request to the Board for its consideration under this section."

In *Karnas v. Derwinski*, 1 Vet.App. 308, 313 (1991), this Court ruled that "where the law or regulation changes after a claim has been filed or reopened but before the administrative or judicial appeal process has been concluded, the version most favorable to the appellant should apply unless Congress provided otherwise or permitted the [Secretary] to do otherwise and the Secretary did so". However, the new section 7111 does not on its face apply unless the claimant has already submitted to VA a claim of CUE in a prior BVA decision. *See Dittrich v. West*, 11 Vet.

App. 10, 11–12, (1998), *en banc review denied,* (Jan. 22, 1998) (en banc order). Here, the appellant's section 1318 DIC claim specifically raised CUE only as to the 1983 RO decision and did not raise a CUE claim as to the 1984 BVA decision. *See Fugo v. Brown,* 6 Vet.App. 40, 44 (1993) (requiring that CUE claims be raised with certain amount of specificity). However, in view of *In re Smith, supra,* and by virtue of the enactment of the new section 7111 providing for direct review at the BVA of claims of CUE in prior final Board decisions, the appellant is now entitled to attack the 1984 BVA decision on CUE grounds as to **both** its implicit determination (under *In re Smith, supra* ) that the 1975 RO decision had committed CUE in awarding TDIU **and** as to its explicit determination that the veteran as of 1984 was no longer entitled to TDIU. If the appellant is successful in bringing **both** such CUE attacks, it appears that she would then also succeed in her section 1318 "entitled to receive" DIC claim because the veteran's TDIU award would have been reinstated from 1975 to 1984 and the negative 1984 BVA determination as to then-current TDIU entitlement would be vitiated. However, if the appellant raises these CUE claims to the Board, such CUE adjudications by the BVA may not be necessary if the appellant can succeed in a section 1318 "entitled to receive" DIC claim under *Green, supra,* as discussed in part II.B., below.

**B. Effect of Green *Opinion and "Entitled to Receive" Language in 38 U.S.C. § 1318 and 38 C.F.R. § 3.22***

The final question, as articulated by the Court in its May 2, 1997, order prior to the enactment of Public Law 105–111 is whether the "entitled to receive" language of 38 U.S.C. § 1318(b) and 38 C.F.R. § 3.22 and the Court's analysis of this language in *Green, supra,* an opinion issued while this case was on appeal, result in the appellant's being able to bypass the 1984 final BVA decision finding that the veteran was not then entitled to TDIU, a decision that in itself could not, as of the date of the Court's May 1997 briefing order, be challenged on the basis of CUE because of *Smith, supra,* and that seemingly then provided an absolute

impediment (barring a BVA determination of "obvious error" under 38 U.S.C. § 7103(c)) to the conclusion that the veteran could have been "entitled" to receive TDIU for the 10 years immediately preceding his death. *See Harper v. Virginia Dept. of Taxation,* 509 U.S. 86, 96, 113 S.Ct. 2510, 2517, 125 L.Ed.2d 74 (1993) (observing that in *James B. Beam Distilling Co. v. Georgia,* 501 U.S. 529, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991), although a unified opinion did not result, a majority there agreed that a new rule of federal law that is applied to parties in case announcing rule must be applied as well to all cases pending on direct review). In light of the enactment of Public Law 105–111, the question now becomes whether the preclusive effect of the final 1984 BVA decision can be overcome by the appellant under the *Green* analysis without the necessity of carrying the heavy burden of showing CUE as to each of the 1984 BVA decision's determinations, as discussed in part II.A, above.

In *Green,* the Court, interpreting the "entitled to receive" language of section 1318(b) and the "for any reason ... would have been entitled to receive" language of § 3.22(a), concluded:

[A] CUE claim is not the sole way for a survivor to show the veteran's entitlement as of the time of the veteran's death. Rather, the survivor is given the right to attempt to demonstrate that the veteran hypothetically would have been entitled to receive a different decision on a service-connection-related issue ... based on evidence in the veteran's claims file or VA custody prior to the veteran's death and the law then or subsequently made retroactively applicable.

*Green,* 10 Vet.App. at 118. At the outset, we note that in his June 20, 1997, supplemental memorandum, the Secretary stated his agreement with a portion of the above proposition from *Green:* "The Secretary agrees with the Court's finding in *Green* that the regulation is clear and unambiguous ... [that] CUE is not the only theory under which a section 1318 DIC claimant may press a claim." Memorandum (Mem.) at 2. The operative question under the above *Green* analysis is the effect on the appellant's sec-

tion 1318 "entitled to receive" DIC claim of the 1984 final Board decision denying the veteran's initial and then-current entitlement to TDIU that was made within the 10 years immediately preceding his death. Upon first impression, this question appears to implicate 38 U.S.C. § 20.1106, which now provides:

> **Except with respect to benefits under the provisions of 38 U.S.C. 1318** and certain cases involving individuals whose [VA] benefits have been forfeited for treason ..., issues involved in a survivor's claim for death benefits **will be decided without regard** to any prior disposition of those issues during the veteran's lifetime.

38 C.F.R. § 20.1106 (1997) (emphasis added).

However, we need not decide in this case the extent to which a survivor's section 1318 "entitled to receive" DIC claim is affected by an adjudication during the veteran's lifetime or the meaning of the "without regard to" exception in the current regulation in § 20.1106. That is because for purposes of adjudicating the appellant's non-CUE section 1318 "entitled to receive" DIC claim under *Green,* that regulatory exception for section 1318 claims was not in effect at the time she brought her claim in September 1991, following the veteran's death in August 1991, or even at the time she first raised her section 1318 claim in October 1991 (R. at 125). At that time, the predecessor of § 20.1106, 38 C.F.R. § 19.196, did not have any "except" preamble. Rather, it provided simply:

> Issues involved in a survivor's claim for death benefits will be decided without regard to any prior disposition of those issues during the veteran's lifetime.

38 C.F.R. § 19.196 (1991). That regulation was replaced effective March 4, 1992, by the promulgation of § 20.1106 as it currently reads. *See* 57 Fed.Reg. 4088, 4102 (1992).

Accordingly, the appellant was entitled to adjudication of her section 1318 "entitled to receive" DIC claim under the law and regulation in effect when she brought that claim in September–October 1991 if that version would be more favorable to the adjudication of her claim, unless the Secretary in changing the regulation in February 1992 specifically made the new § 20.1106 retroactive.

*See DeSousa v. Gober,* 10 Vet.App. 461, 467 (1997) ("Court's holding in *Karnas* [, *supra,*] requires that in all cases VA fully adjudicate veteran's claim under **both** the new **and** old law and regulation to determine the extent to which each may be favorable"); *Karnas, supra.* In fact, the regulatory changes then promulgated were made effective on March 4, 1992, and nothing was stated about their retroactive application. *See* 54 Fed.Reg. 34,-334, 34,338 (1989); 57 Fed.Reg. 4088, 4102 (1992). Hence, when in 1991 the appellant brought her section 1318 DIC claim, which is the claim currently on appeal here, old § 19.196 precluded the 1984 BVA decision's being considered in the adjudication of that claim.

In the BVA decision on appeal, the Board decided explicitly only that because of the Federal Circuit's opinion in *Smith, supra,* the appellant could not bring a claim of CUE as to the 1983 RO decision's termination of TDIU. R. at 10. It therefore *implicitly* denied the appellant's claim for section 1318 DIC. The Secretary's June 20, 1997, supplemental memorandum argues that the appellant chose to pursue on appeal to the Board only the contention that the 1983 RO decision was the product of CUE and that therefore the appellant cannot raise on some other basis a claim pursuant to the section 1318 "entitled to receive" language. Mem. at 3–4. The appellant's Form 1–9 stated:

> Also, he [the veteran] should not have been reduced from 100% in 1983 after having 100% for 8 years based only on one exam. My husband was always extremely nervous and shook at the time because of his nerves. If his 100% would not have been reduced then 10[-]year rule would have qualified me for benefits.

R. at 145. Although this argument implicates the CUE claim, it does not limit itself to a claim of CUE. The appellant has made a general claim for section 1318 benefits, which she specifically articulated as a CUE claim. Although an "entitled to receive" claim has never been adjudicated by the BVA (or the RO, for that matter), *see* SOC at 141 (denying section 1318 DIC because the "evidence of record does **not** show that at the time of the veteran's death, a total disability evalua-

tion *had been* in effect for ten continuous years immediately preceding death" (emphasis added)), such a claim is an intrinsic part of a section 1318 claim. *See Owens (Franklin) v. Brown,* 7 Vet.App. 429, 433 (1995) ("BVA must review all issues which are reasonably raised from a liberal reading of the appellant's substantive appeal"); *EF v. Derwinski,* 1 Vet.App. 324, 326 (1991); VA DVB Circular 21–78–10, Implementation of Public Law 95–479, Change 1, p. 4 amendment to ¶ 11.d. (Nov. 14, 1978) ("In all cases in which service connection for cause of death is denied and the veteran had a totally disabling service[-]connected condition at the time of death the issue of entitlement under 38 U.S.C. § 410(b) must be considered").

Thus, because under *Green* a CUE claim is not the only way for a survivor to show, pursuant to section 1318, that a veteran would have been entitled to receive total disability compensation for the 10 years immediately preceding death, and because 38 C.F.R. § 19.196 (1991) (prior to the promulgation of § 20.1106, effective on March 4, 1992) expressly prohibited consideration, in the adjudication of such a survivor's claim, of a prior disposition of that issue during the veteran's lifetime, such a showing under *Green* is not barred by a contrary, pre-March 4, 1992, BVA decision within those 10 years. As a result, the appellant is entitled to an adjudication of her DIC claim under section 1318 as though it were a claim brought by the veteran prior to his death and without regard to the 1984 BVA decision made during the veteran's lifetime regarding his TDIU entitlement. Accordingly, the Court holds that the Board erred in treating the appellant's section 1318 claim as if it could be pursued only by means of a CUE showing, and this matter will be remanded for adjudication of the appellant's section 1318 "entitled to receive" DIC claim under *Green, supra,* "without regard to any prior disposition of those issues [issues involved in the appellant's DIC claim] during the veteran's lifetime", 38 C.F.R. § 19.196 (1991).

### III. Conclusion

. Upon consideration of the record and the submissions of the parties and in light of the above analysis, the Court vacates the October 20, 1995, BVA decision and remands the section 1318 DIC matter for expeditious further proceedings in accordance with applicable law and regulation and consistent with this opinion and in accordance with section 302 of the Veterans' Benefits Improvements Act (VBIA), Pub.L. No. 103–446, § 302, 108 Stat. 4645, 4658 (1994) (found at 38 U.S.C. § 5101 note) (requiring Secretary to provide for "expeditious treatment" for claims remanded by BVA or Court). *See Allday v. Brown,* 7 Vet.App. 517, 533–34 (1995). As to the remanded claim, "the appellant will be free to submit additional evidence and argument". *Quarles v. Derwinski,* 3 Vet.App. 129, 141 (1992). However, if the appellant on remand presents a claim of CUE in the 1984 BVA decision, the Court "trusts that the BVA and the Secretary will expeditiously treat this matter", *Nash v. West,* 11 Vet.App. 91, 94 (1998); *Rivers v. Gober,* 10 Vet.App. 469, 473 (1997) ("Court presumes that the Secretary will act expeditiously" to adjudicate CUE claim not decided by BVA as to which Court dismissed appeal, citing "*cf.*" to VBIA § 302); on the other hand, the appellant will be free to request that the remanded *Green* section 1318 DIC claim be referred to the RO for adjudication there first before any CUE claims are addressed by the Board under new section 7111. *Cf. Sutton v. Brown,* 9 Vet.App. 553, 569–70 (1996). A final decision by the Board following the remand herein ordered will constitute a new decision that, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the new Board final decision is mailed to the appellant.

VACATED AND REMANDED.

IVERS, Judge, concurring:

Based on the broad language of 38 C.F.R. § 19.196, I must concur in the majority's application of the dicta in *Green (Doris) v. Brown,* 10 Vet.App. 111, 118 (1997), to arrive at the conclusion that the appellant is entitled to a review of her claim for benefits under 38 U.S.C. § 1318 without regard to any disposition of the issues raised by the

claim during her husband's lifetime. The question remains, however, as to the starting point for review upon remand. Since the issue articulated by the appellant in her § 1318 claim is CUE in the 1983 RO decision, does review begin at that point? Under the "entitled to receive" provision of § 1318, must the starting point of analysis be the veteran's date of discharge from service in 1945, or the date of the first award of TDIU in 1975, or August 19, 1981, ten years before the veteran's death? Furthermore, if a complete review is to be made without regard to any disposition during the veteran's lifetime, must VA revisit those dispositions that were favorable to the veteran as well as those that were not? These questions are among those to be addressed by the Board on remand.