Fae S. WINGO, Appellant,

v.

Togo D. WEST, Jr., Secretary of
Veterans Affairs, Appellee.

No. 95–1085.

United States Court of Veterans Appeals.

July 23, 1998.

Gregory A. Morton, Greenville, SC, on pleadings, for appellant.

John H. Thompson, Acting General Counsel; Ron Garvin, Assistant General Counsel; R. Randall Campbell, Deputy Assistant General Counsel; and Peter M. Donawick, on pleadings, for appellee.

Before IVERS, STEINBERG, and GREENE, Judges.

STEINBERG, Judge:

The appellant, Fae S. Wingo, appeals through counsel a July 21, 1995, Board of Veterans' Appeals (BVA or Board) decision that denied her claim for dependency and indemnity compensation (DIC) and referred to a Department of Veterans Affairs (VA) regional office (RO) her accrued-benefits and burial-benefits claims. Record (R.) at 5–6. This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a).

This matter is now pending before the Court on the Secretary's April 24, 1998, motion for panel decision, pursuant to Rule 35(b) of the Court's Rules of Practice and Procedure, of an April 3, 1998, single-judge memorandum decision affirming in part and vacating in part the BVA decision on appeal. *Wingo v. West*, No. 95–1085, 1998 WL 175637 (Vet.App. Apr. 3, 1998). Relying upon its decisions in *Green (Doris) v. Brown*, 10 Vet. App. 111 (1997), and *Carpenter v. West*, 11 Vet.App. 140 (1998), the Court in that decision remanded the appellant's DIC claim for a determination under 38 U.S.C. § 1318 of "whether, had [the veteran] brought a claim more than 10 years prior to his death, he 'would have been entitled' to receive a total disability rating for the 10 years immediately preceding his death", thereby rendering the appellant entitled to section 1318 DIC. *Wingo*, 1998 WL 175637, at *5. In his motion for panel decision, the Secretary, relying upon *Jones (Ethel) v. West*, 136 F.3d 1296 (Fed. Cir.1998), argues that *Green* is inapplicable to the instant case because the veteran had allegedly not filed an application for VA service-connected disability benefits 10 years prior to his death.

In order to give appropriate consideration to the Secretary's contention regarding the applicability of the *Jones* opinion to a section 1318 DIC claim, the panel will grant the motion for panel decision and issue this opinion to replace the April 3, 1998, single-judge decision. The panel notes its agreement with that decision's disposition of the Board decision; this opinion is substantially similar to the April 3, 1998, memorandum decision except that it addresses and rejects the Secretary's argument in reliance on *Jones*. Accordingly, the Court has not found it necessary to request a response from the appellant to the Secretary's motion for panel decision. *See* U.S. VET.APP.R. 35(g). For the reasons that follow, the Court will affirm the BVA decision in part and vacate it in part and remand a matter.

## I. Background

The appellant is the widow of deceased World War II veteran Jesse Wingo, who served on active duty in the U.S. Army from May 1942 to September 1946. R. at 65. In combat in December 1944, the veteran was wounded by a shell fragment that penetrated the right side of his head and fractured his skull. R. at 40. He was released from the hospital in August 1945 but was readmitted in December 1945 with complaints of dizziness, headaches, and blurred vision. *Ibid.* A neurological consultation in May 1946 noted ongoing seizures and recommended that he be placed on permanent limited duty. *Ibid.* A medical board diagnosed "[e]ncephalopathy, post traumatic, mild, manifested by headaches, blurred vision, dizziness, and periods of momentary amnesia" and also recommended that he be assigned limited duty for six months and then reevaluated. R. at 42. The record on appeal (ROA) contains no record of an Army examination at the time of his September 1946 discharge.

The veteran apparently initiated claims proceedings with a VARO while awaiting discharge. A March 1946 VARO letter informed him that the Insurance Claims Council had determined that he was "totally disabled and [therefore] entitled to waiver of payment of premiums" on his National Service Life Insurance. R. at 37–38. In July 1946, the War Department informed VA that he had a "permanent disability", post-traumatic encephalopathy, that rendered him unfit for further military service and that he was entitled to military retirement pay at the rank of major. R. at 58. The RO wrote to the veteran that he would be receiving retirement pay effective in September 1946. R. at 63. That letter noted that statutory provisions prohibited certain Federal employees from receiving retirement pay if the sum of the retirement pay and Federal employment pay exceeded $3,000 but that the provision was not applicable to the veteran because his disability was incurred in combat; the letter concluded:

> If your disability was not incurred in combat or as the result of an explosion of an instrumentality of war in line of duty and you should be employed as contemplated . . . you may elect to receive any compensation or pension to which you may be entitled instead of retired pay. If such an election is made[,] the full amount of compensation or pension due and salary may

be paid concurrently until an election to again receive retired pay is made. *Ibid.*

In July 1959, the Department of the Army certified that it had determined that the veteran was 100% disabled at the time he was released from active duty in September 1946 and that records did not reflect any change in the percentage of his disability since September 1946. R. at 135. In 1982, a VA telephone control slip (VA Form 23–4), apparently reflecting a reply to an inquiry from a "Jack Taylor" at the "Columbia, SC . . . VSD", indicated that the veteran was: "S/C DATA 100% [with] no exam." R. at 74. In November 1991, he filed a claim for VA disability compensation benefits based upon the same disability for which he was receiving military retirement pay. R. at 76–79. He advised VA: "[P]lease consider [drawing] VA benefits in lieu of Military disability retirement". R. at 79. He died in January 1992, apparently before any decision was rendered by the RO on his claim, and his death certificate listed as the causes of death cardiopulmonary failure, due to or as a consequence of renal failure, due to or as a consequence of arteriosclerotic coronary artery disease, inflammatory pneumonitis, and diabetes mellitus. R. at 81. The ROA contains private and VA medical records, dated from October 1990 to January 1992, showing treatment for the conditions that caused his death (R. at 86–119, 197–208), but these records—except for a brain scan that noted retained metal above the right parietal region that was "most probably secondary" to his wartime injury (R. at 95)—do not address his in-service wounds.

In February 1992, the appellant filed a claim for DIC, noting that the "[v]eteran was rated at 100% disabled by the U[.]S[.] Army on 16 Sep[tember] [19]46 and certified to to [sic] Administrator of Veteran[s'] Affairs for retirement pay [b]enefits effec[t]ive 17 Sep[tember] [19]46". R. at 122–25. She filed an application for burial benefits in March 1992. R. at 127–28. An April 1992 RO decision denied service connection for the veteran's cause of death and noted that, because he had never been rated by VA, 38 U.S.C. § 1318 "would not be in effect". R. at

138–39. Concurrent RO decisions also found the veteran's cause of death not service connected for burial-benefits purposes and denied accrued benefits. R. at 140–41, 142–43. The appellant timely appealed those RO decisions to the Board. R. at 150–51, 170–71. In the BVA decision here on appeal, the Board concluded that the appellant's DIC claim was well grounded but denied that claim because it found that a preponderance of the evidence was against service connection for the cause of the veteran's death and because the veteran had not been rated by VA as totally disabled for 10 years immediately prior to his death. R. at 5–6, 9–10.

On February 27, 1997, after all pleadings had been submitted, the Court issued an order holding in abeyance any consideration of the attorney-fee agreement in the instant case pending the issuance of the Court's decision in *Shaw v. Brown*, 10 Vet.App. 264 (1997) which was issued on November 6, 1997, *sub nom. Shaw v. Gober*, 10 Vet.App. 498 (1997).

## II. Analysis

### A. DIC Claim

When a veteran dies from a service-connected disability, the veteran's surviving spouse is eligible for DIC. *See* 38 U.S.C. § 1310; 38 C.F.R. § 3.5(a) (1997) [hereinafter section 1310 DIC]. A veteran's death is due to a service-connected disability when "such disability was either the principal or a contributory cause of death". 38 C.F.R. § 3.312 (1997). A claim for section 1310 DIC is treated as an original claim brought by the survivor, regardless of the status of adjudications concerning service-connected-disability claims brought by the veteran before his or her death. *See* 38 C.F.R. § 20.1106 (1997); *Zevalkink v. Brown*, 6 Vet.App. 483, 491 (1994), *aff'd*, 102 F.3d 1236 (Fed.Cir.1996). In the instant case, the appellant has explicitly abandoned her section 1310 DIC claim (Appellant's Brief at 2 n. 1) and has not addressed the accrued-benefits and burial-benefits claims that the Board referred to the RO; the Court thus considers any issues relating to those claims to have been abandoned as part of this appeal. *See Degmetich v. Brown*, 8 Vet.App. 208, 209 (1995), *aff'd*,

104 F.3d 1328 (Fed.Cir.1997); *Bucklinger v. Brown,* 5 Vet.App. 435, 436 (1993).

However, even if a service-connected condition did not cause or contribute to a veteran's death, the surviving spouse is entitled to receive DIC benefits *"as if* the veteran's death were service connected" (emphasis added) when a veteran meets the requirements in 38 U.S.C. § 1318 and 38 C.F.R. § 3.22 (1997) [hereinafter section 1318 DIC]. Section 1318(b) provides for the payment of DIC, as if the cause of death were service connected, where the veteran has died under the following conditions:

[N]ot as the result of [his or her] own willful misconduct, and [where he or she] was in receipt of or entitled to receive (or but for the receipt of retired or retirement pay was entitled to receive) compensation at the time of death for a service-connected disability that either—

(1) was continuously rated totally disabling for a period of 10 or more years immediately preceding death; or

(2) if so rated for a lesser period, was so rated continuously for a period of not less than five years from the date of such a veteran's discharge or other release from active duty.

38 U.S.C. § 1318(b). The implementing regulation describes this section 1318 DIC entitlement as attaching where

[t]he veteran was in receipt of or *for any reason (including receipt of military retired or retirement pay* or correction of a rating after the veteran's death based on clear and unmistakable error [ (CUE) ]) was not in receipt of but *would have been entitled to* receive compensation at the time of death for a service-connected disablement that either:

(i) Was continuously rated totally disabling by a schedular or unemployability rating for a period of 10 or more years immediately preceding death; or

(ii) Was continuously rated totally disabling by a schedular or unemployability rating from the date of the veteran's discharge or release from active duty for a

period of not less than 5 years immediately preceding death.

38 C.F.R. § 3.22(a)(2) (emphasis added).

A DIC claim must be well grounded under 38 U.S.C. § 5107(a), which provides in pertinent part: "[A] person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." *See Johnson (Ethel) v. Brown,* 8 Vet.App. 423, 426 (1995); *see also Caluza v. Brown,* 7 Vet.App. 498, 506 (1995), *aff'd per curiam,* 78 F.3d 604 (Fed.Cir.1996) (table); *Grottveit v. Brown,* 5 Vet.App. 91, 92 (1993). The Court has defined a well-grounded claim as follows: "[A] plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of [section 5107(a) ]." *Murphy v. Derwinski,* 1 Vet.App. 78, 81 (1990). A well-grounded service-connection claim generally requires (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service injury or disease and a current disability. *See Caluza, supra; see also Epps v. Gober,* 126 F.3d 1464, 1468 (Fed.Cir.1997) (expressly adopting definition of well-grounded claim set forth in *Caluza, supra* ), *cert. denied,* —— U.S. ——, 118 S.Ct. 2348, 141 L.Ed.2d 718.

As an initial matter, the Court concludes that the appellant has submitted a well-grounded claim for section 1318 DIC because she has presented evidence that the veteran was injured in service in 1944, that he was rated 100% disabled thereafter (albeit by the service department), and that he remained so rated until his death in 1992.

In denying the appellant's section 1318 DIC claim, the July 1995 BVA decision concluded:

It is safe to say that the veteran did incur an injury in service, and, had he filed a claim for compensation in 1946 or thereabouts, he would have been entitled to VA compensation (assuming that the disorder was disabling to a compensable degree).

In this case, however, he chose not to file a claim for VA benefits. He opted instead for military retirement pay. This is not a case in which the veteran elected to receive military retirement pay instead of VA compensation to which it had already been determined that he was entitled to receive [sic]. The veteran did not pursue VA compensation at all. This is a case in which the veteran "would have been entitled" to compensation, rather than "was entitled." ... [T]he veteran did file a claim for compensation in 1991. However, since he died in 1992, such claim could not have lead [sic] to satisfaction of the requirement that he be rated 100 percent disabled for at least 10 years immediately preceding his death.... Therefore, at the time of his death, the veteran was neither in receipt of nor entitled to receive compensation for a service-connected disability which had been continuously rated totally disabling for a period of 10 or more years immediately preceding death.

R. at 12. Although the appellant—in an apparent attempt to overcome the Board's position that no claim had every been filed—contends that the veteran had filed an informal claim for VA disability compensation in 1946 and/or 1948 that remains open, the Court need not reach that issue because, for the following reasons, the Board's above interpretation is plainly at odds with the terms of 38 C.F.R. § 3.22(a).

■ Section 3.22(a) provides that a survivor is entitled to section 1318 DIC where the veteran *"for any reason* (including receipt of military retired or retirement pay or correction of a rating after the veteran's death based on [CUE]) was not in receipt of but *would have been entitled to* receive compensation at the time of death for a service-connected disablement" that was, inter alia, continuously rated totally disabling for the ten years preceding death. 38 C.F.R. § 3.22(a) (emphasis added). As the Court concluded in *Green, supra,* where the Secretary proposed a reading of section 1318 that would have limited a survivor's section 1318 DIC claim to a showing of CUE in a prior VA adjudication, such a reading would impermissibly deprive a survivor of a claim where "the deceased veteran had never obtained an adjudication during his or her lifetime"; rather, the law and regulation give the survivor the "right to attempt to demonstrate that the veteran hypothetically would have been entitled to receive a different decision on a service-connection-related issue ... based on evidence in the veteran's claims file or VA custody prior to the veteran's death and the law then or subsequently made retroactively applicable". *Green,* 10 Vet.App. at 118; *see also Carpenter,* 11 Vet.App. at 145–46 (reaffirming as holding the conclusion in *Green* ). In short, "section 1318 and its implementing regulation in § 3.22(a) allow the appellant to obtain a determination of whether the veteran hypothetically would have been entitled to receive" an award of service connection. *Green,* 10 Vet.App. at 119; *see also Carpenter, supra.*

The Board's conclusion that this appellant's section 1318 DIC claim could not be awarded because the veteran had not filed a claim is contrary to § 3.22(a) and the Court's opinions in *Carpenter* and *Green.* The Federal Circuit's opinion in *Jones,* relied upon by the Secretary in his motion for panel decision, held that "in order for a surviving spouse to be entitled to *accrued benefits,* the veteran must have had a claim pending at the time of his death for such benefits or else be entitled to them under an existing rating or decision". *Jones,* 136 F.3d at 1299 (emphasis added). Because the veteran there did not have such a claim pending at his death, the Federal Circuit held that his surviving spouse, "as a consequence of the derivative nature of [her] entitlement to [his] accrued-benefits claim", had no accrued-benefits claim. *Id.* at 1300.

The Court rejects the Secretary's position that this *Jones* holding applies to a DIC claim. The *Jones* opinion's expressions regarding the "general applicability" of the requirement that an application be filed under 38 U.S.C. § 5101(a) in order for benefits to be paid were made in the specific context of an accrued-benefits claim under 38 U.S.C. § 5121(a), the attributes of which led the court there to conclude that "a consequence of the derivative nature of the surviving spouse's entitlement to a veteran's accrued benefits claim is that, without the veteran

having a claim pending at time of death, the surviving spouse has no claim upon which to derive his or her own application". *Id.* at 1299–1300. In contrast to the totally derivative nature of the substance of an accrued-benefits claim, *see Zevalkink,* 6 Vet.App. at 489, a claim for DIC is an original claim brought by the survivor in his or her own right, *see id.,* at 491. In the instant case, it is the appellant's application for DIC that satisfies the section 5101(a) requirement for the filing of a claim, and what remains is for VA to make a determination of whether, under 38 U.S.C. § 1318 and its implementing regulation, the veteran *"for any reason (including receipt of military retired or retirement pay* [] ] . . . was not in receipt of but *would have been entitled* to receive compensation at the time of death for a service-connected disablement". 38 C.F.R. § 3.22(a)(2) (emphasis added). The application of the *Jones* interpretation of section 5101(a) to a section 1318 DIC claim would negate the regulatory language "for any reason".

The Court will therefore vacate the Board decision as to denial of the section 1318 DIC claim and remand that matter for a determination, based upon evidence in the veteran's claims file or before VA at the time of the veteran's death, *see Bell v. Derwinski,* 2 Vet. App. 611, 612–13 (1992) (per curiam order), whether, had he brought a claim more than 10 years prior to his death, he "would have been entitled" to receive a total disability rating for the 10 years immediately preceding his death, thus entitling his survivor to section 1318 DIC in the instant case.

In addition, the appellant contends that the veteran was never advised of his right, consistent with 38 C.F.R. § 3.750 (1997), to elect compensation rather than retirement pay. Section 3.750(b) provides, inter alia: "In initial determinations, elections may be applied retroactively if the claimant was not advised of his or her right of election and the effect thereof." 38 C.F.R. § 3.750(b). A review of the ROA reveals no notification to the veteran of the right of election. Despite the contention in the Secretary's brief to the contrary (Brief at 3, 7), the July 1946 letter from VA to the veteran stated only that if his disability was not incurred in combat or as a result of an explosion of an instrumentality of war he could elect to receive compensation instead of retirement pay. R. at 63. In light of this discrepancy, VA should, on remand, address the bearing of § 3.750 upon the appellant's claim for section 1318 DIC insofar as the veteran was apparently never informed of his right to elect compensation over retirement pay. *Cf. Lewis v. Brown,* 8 Vet.App. 287, 291 (1995) (VA under no duty to advise veteran "when one of the two benefit programs he or she is eligible for suddenly becomes more advantageous").

### B. Fee Agreement

The fee agreement between the appellant and her counsel was filed with the Court on November 9, 1995, pursuant to 38 U.S.C. § 7263(c) and Rule 46(e) of this Court's Rules of Practice and Procedure. That fee agreement stated, inter alia, that any award recovered under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d), will be used to offset the 33.3%-of-past-due-benefits contingency fee, except that "[t]here shall be no reimbursement to the Client for costs or expenses advanced by the Client if the EAJA settlement is less than the full amount requested in the EAJA application". Fee Agreement at 2.

■ Pursuant to 38 U.S.C. § 7263(c), the Court is authorized "on its own motion [to] review . . . a fee agreement" for representation in the Court, and section 7263(d) establishes the scope of such review where it provides that the Court "may order a reduction in the fee called for in the agreement if it finds that the fee is excessive or unreasonable". *See Gaines v. West,* 11 Vet.App. 113, 114, (1998) (per curiam order); *Shaw,* 10 Vet.App. at 502. When an attorney-fee agreement in a case before the Court contemplates direct payment by the Secretary from past-due benefits under 38 U.S.C. § 5904(d), any EAJA award for representation in the Court must be used to "offset" any contingency fee owed for representation in the Court and paid directly by the Secretary from past-due benefits. *See* Federal Courts Administration Act of 1992 (FCAA), Pub.L. No. 102–572, § 506(c), 106 Stat. 4506, 4513 (1992) ("where the claimant's attorney

receives fees for the same work under both section 5904 of title 38, United States Code, and section 2412(d) of title 28, United States Code, the claimant's attorney refunds to the claimant the amount of the smaller fee"); *Gaines*, 11 Vet.App. at 114–15; *Shaw*, 10 Vet.App. at 500, 503–04; *Curtis v. Brown*, 8 Vet.App. 104, 108–09 (1995).

■ In the instant case, the appellant's attorney appears not to be seeking direct payment from the Secretary pursuant to section 5904(d). However, in *Shaw*, the Court concluded that a "fee agreement is 'unreasonable' on its face to the extent that it may be read as precluding an offset where the Court remands with a direction that the BVA award benefits that the Court finds are required as a matter of law". *Shaw*, 10 Vet. App. at 505; *see also Gaines*, 11 Vet.App. at 115. The Court concluded in *Shaw* that that standard applies even in cases where an attorney is not seeking direct payment by the Secretary pursuant to section 5904(d) because "the policy underlying the proscription in section 506 [of the FCAA] against double payment for the same legal work is inherent in the policy against an 'unreasonable' fee embodied in section[ ] . . . 7263(d)". *Shaw*, 10 Vet.App. at 504; *see also Gaines, supra.* Significantly, the Court specifically concluded that an identical provision to that in the instant agreement, precluding reimbursement to the appellant for costs or expenses advanced by the appellant if the EAJA award were less than the full amount requested, was " 'unreasonable' on its face under section 7263(d) and thus unenforceable because it would permit unwarranted compensation to the attorney and would impermissibly mix fees with costs and expenses". *Shaw*, 10 Vet.App. at 505–06; *see also Gaines, supra.* "To the extent that an EAJA award is made for costs and expenses advanced by the client, such costs and expenses must be turned over to the client." *Shaw*, 10 Vet.App. at 505; *see also Gaines, supra.* Therefore, the Court concludes that the provision in question in the instant fee agreement is unenforceable.

### III. Conclusion

The Court grants the Secretary's April 24, 1998, motion for panel decision and with-

draws its April 3, 1998, memorandum decision. Upon consideration of the ROA and the submissions of the parties, the Court affirms the July 21, 1995, BVA decision in part as to the denial of section 1310 DIC and vacates the decision in part and remands the matter of section 1318 DIC for expeditious further development and readjudication, on the basis of all applicable law and regulation, and issuance of a readjudicated decision supported by an adequate statement of reasons or bases, *see* 38 U.S.C. §§ 1318, 5107(a), (b), 7104(a), (d)(1); 38 C.F.R. §§ 3.22(a), 3.750(b); *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991)—all consistent with this opinion and in accordance with section 302 of the Veterans' Benefits Improvements Act, Pub.L. No. 103–446, § 302, 108 Stat. 4645, 4658 (1994) (found at 38 U.S.C. § 5101 note) (requiring Secretary to provide for "expeditious treatment" for claims remanded by BVA or the Court). *See Allday v. Brown*, 7 Vet.App. 517, 533–34 (1995). "On remand, the appellant will be free to submit additional evidence and argument" on the remanded claim. *Quarles v. Derwinski*, 3 Vet.App. 129, 141 (1992). A final decision by the Board following the remand herein ordered will constitute a new decision that, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the new Board final decision is mailed to the appellant.

AFFIRMED IN PART; VACATED AND REMANDED IN PART.