NATIONAL ORGANIZATION OF
VETERANS' ADVOCATES,
INC., Petitioner,

and

Disabled American Veterans,
Petitioner,

and

Paralyzed Veterans of America,
Petitioner,

v.

SECRETARY OF VETERANS
AFFAIRS, Respondent.

Nos. 00–7095, 00–7096 and 00–7098.

United States Court of Appeals,
Federal Circuit.

Aug. 16, 2001.

1366

Kenneth M. Carpenter, Carpenter, Chartered, of Topeka, Kansas, argued for petitioner National Organization of Veterans' Advocates.

Stephen L. Purcell, Disabled American Veterans, of Washington, DC, argued for petitioner Disabled American Veterans. With him on the brief was Ronald L. Smith.

Michael P. Horan, Paralyzed Veterans of America, of Washington, DC, argued for petitioner Paralyzed Veterans of America.

Russell A. Shultis, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent Secretary of Veterans Affairs. On the brief were David M. Cohen, Director; Deborah A. Bynum, Assistant Director; and John J. Field, Attorney. Of counsel on the brief were Donald E. Zeglin; and David J. Barrans, Attorneys, Department of Veterans Affairs, of Washington, DC. Of counsel were Stephen A. Bergquist, and Thomas O. Gessel, Attorneys, Department of Veterans Affairs; and Thomas B. Fatouros, Trial Attorney, Department of Justice.

Before CLEVENGER, SCHALL, and DYK, Circuit Judges.

DYK, Circuit Judge.

National Organization of Veterans' Advocates, Inc., ("NOVA"), Disabled American Veterans ("DAV"), and Paralyzed Veterans of America ("PVA") (collectively, "petitioners"), challenge the validity of a regulation promulgated by the Department of Veterans Affairs, 38 C.F.R. § 3.22 (2000).[1] That regulation, as revised in January 2000, restricts the award of dependency and indemnity compensation ("DIC") benefits to survivors[2] of deceased veterans to cases where the veteran (during his or her lifetime) had established a right to receive total service-connected dis-

---

1. Unless otherwise indicated, all references to regulations are to regulations as set forth in the 2000 version of the Code of Federal Regulations.

2. "Survivors" is defined by statute as "the surviving spouse and ... children of a deceased veteran." 38 U.S.C. § 1318(a).

ability compensation for the period of time required by the governing statute, 38 U.S.C. § 1318 (1994),[3] or would have established such right but for clear and unmistakable error by the Department of Veterans Affairs in adjudicating the veteran's claim. We conclude that the revised regulation is inconsistent with another regulation, 38 C.F.R. § 20.1106, that interprets a virtually identical veterans' benefits statute, 38 U.S.C. § 1311(a)(2). We further conclude that the agency has failed to explain its rationale for interpreting these virtually identical statutes in conflicting ways. We therefore remand this case to the Department of Veterans Affairs for further consideration.

## BACKGROUND

Initially it is useful to briefly review the statutory scheme governing the award of DIC benefits to survivors of deceased veterans.

Under chapter 13 of title 38, United States Code, the Department of Veterans Affairs is authorized to pay DIC benefits to survivors of a deceased veteran whose death is due to a disability incurred during the veteran's military service ("service-connected disability").[4] Section 1310(a), enacted in 1958, provides in pertinent part that "[w]hen any veteran dies after December 31, 1956, from a service-connected or compensable disability, the [Department of Veterans Affairs] shall pay [DIC benefits] to such veteran's surviving spouse, children, and parents." 38 U.S.C. § 1310(a); *see also* 38 C.F.R. § 3.5(a). Where the veteran's death is service-connected, survivors may also be entitled to increased DIC benefits, if certain requirements are met. Section 1311 provides in pertinent part that survivors may receive increased benefits:

> [I]n the case of the death of a veteran who at the time of death was in receipt of *or was entitled to receive ... compensation* for a service-connected disability that was rated totally disabling for a continuous period of at least eight years immediately preceding death.

38 U.S.C. § 1311(a)(2) (emphasis added). In other words, section 1311 entitles survivors of a veteran (who dies from a service-connected total disability) to receive DIC benefits even if the veteran did not receive compensation for that disability during his or her lifetime.

A different statute is involved here. Section 1318 of title 38 governs the award of DIC benefits when the veteran's death is *not* service-connected. This statutory prescription is comparatively recent. Before 1978, payment of DIC benefits was limited by section 1310(a) to survivors of service members who died on active duty or veterans who died post-service as a result of service-connected disabilities.

In 1978, however, Congress, by enacting section 1318, provided for the payment of DIC benefits to the survivors of a veteran whose death was *not* caused by a service-connected disability, but who, at the time of death, "was in receipt of (or but for the receipt of retired or retirement pay was entitled to receive)" compensation for a service-connected disability that was rated 100 percent disabling for 10 years immediately preceding death, or for five years continuously from the date of the veteran's discharge. Veterans' Disability Compensation and Survivors' Benefits Act of 1978, Pub.L. No. 95–479, 92 Stat. 1560, 1564 (1978). That provision was codified in 38

---

3. Unless otherwise indicated, all statutory references are to the 1994 version of the United States Code.

4. A veteran's death is due to a service-connected disability when "such disability was either the principal or a contributory cause of death." 38 C.F.R. § 3.312(a).

U.S.C. § 410(b)(1) (1976 & Supp. II 1978), a predecessor statute to 38 U.S.C. § 1318. In 1979, the Department of Veterans Affairs issued 38 C.F.R. § 3.22 to implement section 410(b)(1). 44 Fed.Reg. 22,716, 22,-718 (Apr. 17, 1979). Subsection (a) of that regulation provided, in pertinent part, that:

Benefits ... shall be paid to a deceased veteran's surviving spouse ... or children in the same manner as if the veteran's death is service-connected when the following conditions are met:

(1) The veteran's death was not caused by his or her own willful misconduct; and

(2) The veteran was in receipt of (or but for the receipt of military retired pay was entitled to receive) compensation at time of death for service-connected disability that either:

(i) Was continuously rated totally disabling ... for a period of 10 or more years immediately preceding death; or

(ii) Was continuously rated totally disabling ... from the date of the veteran's discharge or release from active duty for a period of not less than 5 years immediately preceding death.

38 C.F.R. § 3.22(a) (1979).

In 1981 the General Counsel of the Department of Veterans Affairs issued an opinion that concluded, in pertinent part, that "38 U.S.C. § 410(b)(1) (1976) does not provide a basis for finding entitlement to survivors' benefits where a veteran, at death, had been in receipt of compensation for total disability but not for the requisite duration solely because of [Department of Veterans Affairs] error in the rating assigned." O.G.C. Prec. Op. 2–81, at 2 (May 21, 1981). In other words, that opinion barred survivors from receiving DIC benefits in cases where the agency's error deprived a totally disabled veteran from receiving his or her statutorily prescribed benefits for the requisite five- or ten-year period.

In response to that General Counsel opinion, Congress in 1982 amended 38 U.S.C. § 410(b)(1). That amended statute (as currently codified at 38 U.S.C. § 1318) states in pertinent part that DIC benefits would be awarded to survivors of a deceased veteran (whose death was not service-connected) where that veteran died:

[N]ot as the result of the veteran's own willful misconduct, and who was in receipt of *or entitled to receive ... compensation at the time of death for a service-connected disability* rated totally disabling if

(1) the disability was continuously rated totally disabling for a period of 10 or more years immediately preceding death; [or]

(2) the disability was continuously rated totally disabling for a period of not less than five years from the date of such veteran's discharge or other release from active duty.

38 U.S.C. § 1318(b) (Supp. V 1999) (emphasis added). The legislative history accompanying section 1318 made clear that the purpose of the 1982 amendment was "to provide that the requirement that the veteran have been in receipt of compensation for a service-connected disability rated as total for 10 years prior to death (or for 5 years continuously from the date of discharge) is met *if the veteran would have been in receipt of such compensation for such period but for a clear and unmistakable error regarding the award of a total-disability rating.*" Explanatory Statement of Compromise Agreement, 128 Cong. Rec. H7777 (1982), *reprinted in* 1982 U.S.C.C.A.N. 3012, 3013 (emphasis added).

In sum, sections 1311 and 1318 both prescribe circumstances under which survivors of deceased veterans may receive

DIC benefits. And both statutes provide that survivors may obtain benefits (or increased benefits) in cases where the deceased veteran was "entitled to receive" compensation for a totally disabling injury preceding death. Yet the Department of Veterans Affairs has promulgated implementing regulations for those statutes that interpret the virtually identical language of the statutes in conflicting ways. It is to those implementing regulations that we now turn.

### The Language and Judicial Interpretations of 38 C.F.R. § 20.1106

As noted above, 38 U.S.C. § 1311 addresses the DIC benefits payable to survivors of a veteran whose death is due to a service-connected disability. Subsection (a)(2) of § 1311 states, in pertinent part, that the DIC benefits may be increased:

> [I]n the case of the death of a veteran who at the time of death was in receipt of *or was entitled to receive . . . compensation* for a service-connected disability that was rated totally disabling for a continuous period of at least eight years immediately preceding death.

38 U.S.C. § 1311(a)(2) (emphasis added). The statute's implementing regulation, 38 C.F.R. § 20.1106, provides in pertinent part that "[e]xcept with respect to benefits under the provisions of 38 U.S.C. § 1318 . . ., issues involved in a survivor's claim for [DIC] benefits will be decided without regard to any prior disposition of those issues during the veteran's lifetime." 38 C.F.R. § 20.1106.

In *Hix v. Gober*, 225 F.3d 1377 (Fed.Cir. 2000), the Court of Appeals for Veterans Claims [5] had concluded that where the veteran had not applied for compensation for a service-connected disability during his lifetime, the "entitled to receive" provision

of the statute nonetheless required the Department of Veterans Affairs to retroactively determine "whether the deceased veteran hypothetically would have been entitled to receive compensation" for a totally disabling service-connected injury. *Hix*, 225 F.3d at 1378–79.

We affirmed, noting that the requirements of 38 C.F.R. § 20.1106 were "dispositive of the interpretation of 38 U.S.C. § 1311," *Hix*, 225 F.3d at 1380. We accordingly held that section 1311 required "*de novo* determination of the veteran's disability, upon the entirety of the record including any new evidence presented by the surviving spouse." *Id.* at 1380–81. An opposite result is reached by the regulations under section 1318.

### The Language and Judicial Interpretations of 38 C.F.R. § 3.22

In 1983, the Department of Veterans Affairs revised 38 C.F.R. § 3.22 in light of the 1982 amendment to section 1318. The revised regulation stated, in pertinent part, that survivors would receive DIC benefits when the veteran "was in receipt of *or for any reason (including . . . correction of a rating after the veteran's death based on clear and unmistakable error) was not in receipt of but would have been entitled to receive compensation* at the time of death" for a totally disabling service-connected disability. 38 C.F.R. § 3.22(a) (1984) (emphasis added).

Following these revisions, the Court of Appeals for Veterans Claims in several cases involving the eligibility of survivors for DIC benefits, broadly interpreted the "entitled to receive" language of section 1318(b) and the corresponding language of 38 C.F.R. § 3.22(a). Before the Court of Appeals for Veterans Claims, the Depart-

---

**5.** On March 1, 1999, the name of the United States Court of Veterans Appeals was changed to the United States Court of Appeals for Veterans Claims pursuant to enactment of the Veterans Programs Enhancement Act of 1998, Pub.L. No. 105–368, § 511, 112 Stat. 3315, 3341 (1998). We refer throughout this opinion to the court by its new name.

ment of Veterans Affairs urged that the statute and regulation limited the award of DIC benefits to cases where the veteran's failure to receive compensation for a service-connected total disability was solely attributable to clear and unmistakable error by the Department of Veterans Affairs in the adjudication of an application for benefits filed by the veteran during his or her lifetime. In other words, the Department of Veterans Affairs argued that survivors could not obtain DIC benefits under section 1318 unless the deceased veteran had, during his lifetime, filed an application for compensation for a service-connected total disability.

■ The Court of Appeals for Veterans Claims disagreed, concluding that section 1318 and 38 C.F.R. § 3.22 permitted the award of DIC benefits to survivors in cases where the deceased veteran had never applied for compensation for a service-connected total disability that could have resulted in entitlement to such compensation. As that court explained in *Green v. Brown*, 10 Vet.App. 111 (1997):

> [A]s we interpret the applicable law and regulation in section 1318(b) and § 3.22(a)(2), a ... claim [of clear and unmistakable error by the Department of Veterans Affairs] is not the sole way for a survivor to show the veteran's entitlement as of the time of the veteran's death. Rather, the survivor is given the right to attempt to demonstrate that the veteran hypothetically would have been entitled to receive a different decision on a service-connection-related issue ... based on evidence in the veteran's claims file or [Department of Veterans Affairs'] custody prior to the veteran's death and the law then or subsequently made retroactively applicable.

*Id.* at 118; *see also, e.g., Wingo v. West*, 11 Vet.App. 307, 311 (1998) ("[S]ection 1318 and its implementing regulation in § 3.22(a) allow the [survivor] to obtain a determination of whether the veteran hypothetically would have been entitled to receive an award of service connection.") (quoting *Green*, 10 Vet.App. at 119); *Carpenter v. West*, 11 Vet.App. 140, 145–46 (1998) (reaffirming *Green*). It is these decisions of the Court of Appeals for Veterans Claims that led the agency to revise the regulation at issue here.

*The 2000 Revisions to 38 C.F.R. § 3.22*

On January 21, 2000, the Department of Veterans Affairs promulgated a final rule in the Federal Register (that became effective that same day) captioned "DIC Benefits for Survivors of Certain Veterans Rated Totally Disabled at Time of Death." *See* 65 Fed.Reg. 3,388 (Jan. 21, 2000) ("Final Rule"). This Final Rule is challenged here.

The Final Rule revised 38 C.F.R. § 3.22 in two pertinent respects. First, it struck from subsection (a) of the regulation the language that authorized survivors to receive DIC benefits if the deceased veteran was "for any reason" entitled to receive (at the time of his or her death) compensation for a totally disabling service-connected disability. In other words, the Final Rule revised subsection (a) to provide in pertinent part that the Department of Veterans Affairs would pay DIC benefits to survivors in the same manner as if the veteran's death was service-connected only if: "(1) [t]he veteran's death was not the result of his or her own willful misconduct, and (2)[a]t the time of death, the veteran was receiving, *or was entitled to receive*, compensation for [a totally disabling] service-connected disability...." 38 C.F.R. § 3.22(a) (emphasis added).

Second, it revised subsection (b) to expressly define "entitled to receive" as effectively limited to a situation where the veteran's failure to receive benefits is "due solely to clear and unmistakable error" by

the agency. The revised subsection provides, in pertinent part, that:

> [A]t the time of death, the veteran had service-connected disability rated totally disabling by VA but was not receiving compensation because: ... (3) The veteran had applied for compensation but had not received total disability compensation due solely to clear and unmistakable error in a VA decision concerning the issue of service connection, disability evaluation, or effective date....

38 C.F.R. § 3.22(b).[6] In short, the Final Rule reflected the Department of Veterans Affairs' conclusion "that the phrase 'entitled to receive ... compensation' is most reasonably interpreted as referring to cases where the veteran had established a legal right to receive compensation for the required period ..., but was not actually receiving the compensation." *Final Rule,* 65 Fed.Reg. at 3,389.

The Department of Veterans Affairs made clear in the explanatory text accompanying the Final Rule that it had revised 38 C.F.R. § 3.22 to respond to the Court of Appeals for Veterans Claims' decisions in *Green* and its progeny. Pointing to the Court of Appeals for Veterans Claims' decision in *Wingo,* 11 Vet.App. at 311, for example, the Department of Veterans Affairs stated that "§ 3.22, as interpreted by the [Court of Appeals for Veterans Claims], does not accurately reflect the requirements of the statute [38 U.S.C. § 1318] and [the Department of Veterans Affairs'] intention in issuing that regulation." *Final Rule,* 65 Fed.Reg. at 3,390. Finally, the Department of Veterans Affairs characterized this Final Rule as solely an "interpretive rule," *i.e.,* a rule that "merely clarifies or explains existing stat-

utes or regulations." *Id.* The Department of Veterans Affairs accordingly did not publish the proposed Final Rule for notice-and-comment by interested parties.

As noted above, this Final Rule became effective on January 21, 2000. NOVA filed a timely petition for review with this court on March 17, 2000, challenging the validity of 38 C.F.R. § 3.22, as revised. DAV and PVA filed similar timely petitions for review on March 20, 2000, and March 21, 2000, respectively. We *sua sponte* consolidated these three petitions on March 21, 2000.

## DISCUSSION

### I

We have jurisdiction to directly review the validity of both the rulemaking process and the regulation challenged here pursuant to 38 U.S.C. § 502. "[U]nder 38 U.S.C. § 502, we may review the [Department of Veterans Affairs'] procedural and substantive rules, any amendments to those rules, and the process in which those rules are made or amended." *Disabled Am. Veterans v. Gober,* 234 F.3d 682, 688 (Fed.Cir.2000), *cert. denied,* —— U.S. ——, 121 S.Ct. 1605, 149 L.Ed.2d 471 (2001).

We conduct this review, as stated above, in accordance with the standards set forth in the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. This review is "highly deferential" to the actions of the agency. *Disabled Am. Veterans,* 234 F.3d at 691.

### II

■ Before considering the merits of the statutory construction reflected in the

---

6. Subsection (b) of the regulation further provides that the veteran was also "entitled to receive" compensation where, *inter alia,* (1) the Department of Veterans Affairs "was paying the compensation to the veteran's depen-

dents," and (2) "[t]he veteran had not waived retired or retirement pay in order to receive compensation." 38 C.F.R. § 3.22(b)(1), (b)(4).

revised regulation, we must address two preliminary issues. First, at least some of the petitioners assert that the Department of Veterans Affairs must abide by the earlier decisions of the Court of Appeals for Veterans Claims in *Green, Carpenter,* and *Wingo.* They urge that the agency had the right to appeal those decisions to this court if they thought they were erroneous, and, having failed to do so, the agency is bound by the holdings of those cases. They rely on our recent decision in *Bankers Trust New York Corp. v. United States,* 225 F.3d 1368 (Fed.Cir.2000), where we held that this court is bound by its own earlier decisions directly construing a statutory provision, and in that respect followed decisions of the Supreme Court in *Maislin Industries, U.S., Inc. v. Primary Steel, Inc.,* 497 U.S. 116, 131, 110 S.Ct. 2759, 111 L.Ed.2d 94 (1990), and its progeny applying that same principle to the Supreme Court itself. *See, e.g., Neal v. United States,* 516 U.S. 284, 295, 116 S.Ct. 763, 133 L.Ed.2d 709 (1996); *Lechmere, Inc. v. N.L.R.B.,* 502 U.S. 527, 536–37, 112 S.Ct. 841, 117 L.Ed.2d 79 (1992).

■ The petitioners seriously misunderstand the decision in *Bankers Trust* and, more importantly, the nature of the judicial function. A final decision of an Article III court binds the parties to that particular controversy as a matter of res judicata. Section 34 of the *Restatement (Second) of Judgments,* for example, makes clear that "[a] party [to an action] is bound by and entitled to the benefits of the rules of res judicata with respect to determinations made while he was a party," subject to certain exceptions not applicable here. *Restatement (Second) of Judgments* § 34(2) (1982).

■ But that final judicial decision is not binding on parties in a future case, except in those circumstances where the earlier case would be entitled to collateral estoppel effect. The petitioners here do not assert that the agency in this case is collaterally estopped from re-litigating the issue of statutory construction. Nor could they colorably assert such a claim. Section 28 of the *Restatement (Second) of Judgments* (1982) makes clear, for example, that "[a]lthough an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment," *id.,* that issue may be re-litigated when it is "one of law and ... the two actions involve claims that are substantially unrelated." *Id.* at § 28(2). An accompanying comment emphasizes that this rule applies with particular force when the issue to be re-litigated involves, as here, "the formulation or scope" of a statute or applicable legal rule:

> [I]f the issue is one of the formulation or scope of the applicable legal rule, and if the claims in the two actions are substantially unrelated, the more flexible principle of stare decisis is sufficient to protect the parties and the court from unnecessary burdens. A rule of law declared in an action between two parties should not be binding on them for all time, especially as to claims arising after the first proceeding has been concluded, when other litigants are free to urge that the rule should be rejected.

*Id.* at § 28, cmt. b, at 275–76. Thus the only effect of the Court of Appeals for Veterans Claims' decisions in *Green* and the subsequent cases is as a matter of stare decisis.

■ But stare decisis is a doctrine that binds courts to follow their own earlier decisions or the decisions of a superior tribunal. As we have previously noted, stare decisis "in essence makes each judgment a statement of the law, or precedent, binding in future cases before the same court or another court owing obedience to its decision." *Mendenhall v. Cedarapids, Inc.,* 5 F.3d 1557, 1570 (Fed.Cir.1993), *cert.*

*denied,* 511 U.S. 1031, 114 S.Ct. 1540, 128 L.Ed.2d 192 (1994). It does not bind parties not to challenge those decisions, at least where the issue remains unresolved at the highest level. *See Cooper v. Aaron,* 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5 (1958) (holding that litigants are bound by previous well-established decisions of the Supreme Court). Thus, under *Bankers Trust* we are bound to follow earlier decisions of this court that directly construe a statute,[7] but that does not mean that the parties are bound to do so, at least if they plan to seek review of that issue to the Supreme Court, which is not bound by our earlier decision.[8] The same rule applies in cases before the Court of Appeals for Veterans Claims. Moreover, it is even appropriate for a party to seek to re-litigate an issue of statutory interpretation in the same court that rendered its earlier decision, at least if the original decision was based on deference to the agency's interpretation of the statute under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), and the agency has changed its interpretation. *See Bankers Trust,* 225 F.3d at 1376 (noting that in such a situation, "we might well consider the agency's change of heart as a significant factor").[9]

Thus, it was perfectly appropriate for the Department of Veterans Affairs to at-

tempt to re-litigate the Court of Appeals for Veterans Claims' construction of 38 U.S.C. § 1318 in this court. It could do so either by raising the issue in a new case at the Board of Veterans' Appeals or by proceeding through rulemaking. Here it chose the latter course. Neither we nor the Department of Veterans Affairs is bound by the earlier Court of Appeals for Veterans Claims' decisions cited by petitioners.

### III

■ The petitioners also claim that we should invalidate the regulation because it is a substantive rule (otherwise known as a "legislative rule") that was not promulgated in accordance with the notice and comment rulemaking procedures of the Administrative Procedure Act. In contrast, the Department of Veterans Affairs stated in the explanatory text accompanying that Final Rule that it had "dispensed" with those statutory requirements because it considered the rule to be interpretive rather than substantive. Final Rule, 65 Fed. Reg. at 3,391.

■ A determination of whether the Final Rule is substantive or interpretive is significant. The APA provides in pertinent part that when an agency proposes to promulgate a substantive rule, it must give notice to interested parties and allow them

---

7. *Bankers Trust* made clear that our obligation to follow earlier decisions of this court need not apply at all when those earlier decisions are "based on deference to the agency." *Bankers Trust,* 225 F.3d at 1376; *see also Chevron U.S.A., Inc. v. Natural Res. Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

8. Even the cases cited by petitioners make clear that an agency is bound to follow higher authority only when it acts as an adjudicator, and not when it litigates. *See Kirkland v. R.R. Ret. Bd.,* 706 F.2d 99 (2d Cir.1983); *Ithaca Coll. v. N.L.R.B.,* 623 F.2d 224 (2d Cir.), *cert.*

*denied,* 449 U.S. 975, 101 S.Ct. 386, 66 L.Ed.2d 237 (1980); *Stieberger v. Heckler,* 615 F.Supp. 1315 (S.D.N.Y.1985), *vacated,* 801 F.2d 29 (2d Cir.1986).

9. In *Century Steel Erectors, Inc. v. Dole,* 888 F.2d 1399 (D.C.Cir.1989), for example, the District of Columbia Circuit made clear that if its construction of the agency's regulation contravened the agency's intent underlying that regulation, and thus "intention and expression [do] not coincide," the agency "remains free to amend or clarify" those regulations. *Id.* at 1405.

an opportunity to comment on the proposed rule:

> (b) General notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law....
>
> ....
>
> (c) After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments.....

5 U.S.C. § 553(b)-(c). Failure to allow notice and comment, where required, is grounds for invalidating the rule. *See, e.g., Auer v. Robbins,* 519 U.S. 452, 459, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997) ("A court may certainly be asked by parties ... to disregard an agency regulation ... that appears on the public record to have been issued in violation of procedural prerequisites, such as the 'notice and comment' requirements of the APA, 5 U.S.C. § 553"); *Chrysler Corp. v. Brown,* 441 U.S. 281, 313, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979) ("Certainly regulations subject to the APA cannot be afforded the force and effect of law if not promulgated pursuant to the statutory procedural minimum found in that Act.") (internal quotations omitted). Interpretive rules, in contrast, are exempt from these notice and comment requirements. 5 U.S.C. § 553(b)(3)(A); *see also Splane v. West,* 216 F.3d 1058, 1063 (Fed.Cir.2000).

We have previously explained the distinction between substantive and interpretive rules as follows:

"[S]ubstantive rules" [are] those that effect a change in existing law or policy or which affect individual rights and obligations. "Interpretative rules," on the other hand, clarify or explain existing law or regulation and are exempt from notice and comment under section 553(b)(A).... "[A]n interpretative statement simply indicates an agency's reading of a statute or a rule. It does not intend to create new rights or duties, but only reminds affected parties of existing duties."

*Paralyzed Veterans of Am. v. West,* 138 F.3d 1434, 1436 (Fed.Cir.1998) (quoting *Orengo Caraballo v. Reich,* 11 F.3d 186, 195 (D.C.Cir.1993) (internal citations omitted)). An "interpretive rule," in other words, merely "represents the agency's reading of statutes and rules rather than an attempt to make new law or modify existing law." *Splane,* 216 F.3d at 1063; *see also Shalala v. Guernsey Mem'l Hosp.,* 514 U.S. 87, 99, 115 S.Ct. 1232, 131 L.Ed.2d 106 (1995) (noting that an interpretive rule may be "issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers").

Petitioners argue that the January 2001 revisions are substantive because they "modify existing law," *id.,* namely, the decisions of the Court of Appeals for Veterans Claims in *Green, Carpenter,* and *Wingo.* We do not agree. Those decisions rested in large part on the Court of Appeals for Veterans Claims' interpretation of the earlier version of 38 C.F.R. § 3.22.[10] The agency, in turn, promulgated the revisions to § 3.22 to make clear that those judicial decisions did "not accurately re-

---

10. *See Green,* 10 Vet.App. at 115 (discussing and interpreting the language of 38 C.F.R. § 3.22); *Carpenter,* 11 Vet.App. at 145 (recognizing that the result in *Green* hinged in part on the interpretation of the regulation); *Wingo,* 11 Vet.App. at 311; *see also* Final Rule, 65

Fed.Reg. at 3,390 ("[T]he [Court of Appeals for Veterans Claims'] discussion [in *Wingo* ] indicates that its conclusion was based primarily, if not exclusively, on the language of § 3.22(a).").

flect the requirements of the statute [38 U.S.C. § 1318] and the [Department of Veterans Affairs'] intention in issuing that regulation [38 C.F.R. § 3.22]." Final Rule, 65 Fed.Reg. at 3,390. In short, the January, 2001, revisions merely clarified the Department of Veterans Affairs' interpretation (in 38 C.F.R. § 3.22) of 38 U.S.C. § 1318. And a rule that does no more than clarify the interpretation of a statute is necessarily interpretive in character, even if that interpretation has consequences for the rights of the parties.

This conclusion finds support in decisions of at least four of our sister courts of appeals, namely, the Second, Seventh and Ninth Circuits and the District of Columbia Circuit.

The Second, Seventh and Ninth Circuits have concluded that an interpretive rule may change or clarify an agency's interpretation of its governing statute. In *White v. Shalala*, 7 F.3d 296 (2d Cir. 1993), for example, the Second Circuit held that "[i]f the rule is an interpretation of a statute rather than an extra-statutory imposition of rights, duties or obligations, it remains interpretive even if the rule embodies the Secretary's changed interpretation of the statute." *Id.* at 304. Similarly, in *Chief Probation Officers of California v. Shalala*, 118 F.3d 1327 (9th Cir.1997), Justice White, sitting by designation, concluded that the rule at issue that terminated federal matching funds for state juvenile justice programs was

interpretive not substantive, and rejected the "blanket proposition that that any change in policy constitutes a [substantive] rule." *Id.* at 1335–36. Finally, in *Metropolitan School District of Wayne Township v. Davila*, 969 F.2d 485 (7th Cir.1992), *cert. denied*, 507 U.S. 949, 113 S.Ct. 1360, 122 L.Ed.2d 740 (1993), the Seventh Circuit noted in pertinent part that "an agency's change in its reading of the statute does not necessarily make the rule announcing the change [substantive]." *Id.* at 492.

■■■ To be sure, if the earlier interpretation is contained in a substantive rule, a change may also have to be made in the same manner. In *Orengo Caraballo v. Reich*, 11 F.3d 186 (D.C.Cir.1993), for example, the District of Columbia Circuit emphasized that a rule that changes or clarifies an agency's interpretation of its governing statute is not necessarily a substantive rule. The court made clear that "[o]nly where a second rule repudiates or is irreconcilable" with a prior [substantive] rule must the second rule "be an amendment of the first," and therefore itself be a substantive rule. *Id.* at 196 (internal quotations and brackets omitted). The revisions here neither "repudiate" nor are "irreconcilable" with the agency's earlier version of 38 C.F.R. § 3.22, and accordingly are not substantive rules.[11]

In light of the decisions of our sister courts of appeals on this point, we con-

---

**11.** Petitioners direct our attention to *American Mining Congress v. Mine Safety & Health Administration*, 995 F.2d 1106 (D.C.Cir.1993), wherein the District of Columbia Circuit held in pertinent part that a rule is "legislative," (*i.e.*, substantive) if any one of these conditions are satisfied: (1) that without the rule, the agency lacks an "adequate legislative basis" for its action, *i.e.*, its refusal to be bound by the decisions in *Green, Wingo*, and *Carpenter;* or (2) that the agency published the rule in the Code of Federal Regulations, or (3) that "the rule effectively amends a prior legislative

rule." *Id.* at 1112. Petitioners urge that these three conditions are met here, and thus the January, 2001, revisions are substantive.

Even if we were bound by *American Mining Congress*, we could not agree with petitioners. The rule here merely clarifies 38 C.F.R. § 3.22 and, as the District of Columbia Circuit has noted, "[a] rule does not ... become an amendment merely because it supplies crisper and more detailed lines than the authority being interpreted." *Am. Mining Congress*, 995 F.2d at 1112.

clude that the challenged rule, which does no more than interpret the requirements of section 1318, and clarifies the agency's earlier interpretation of that statute, is an interpretive rule not subject to the notice and comment requirements of the APA.

## IV

■■■ Turning then to the merits, each side claims that 38 U.S.C. § 1318 is clear; each side claims that it can only be interpreted in accordance with its position. We disagree with both sides. In our view the statute is ambiguous.

As noted above, the statute provides, in pertinent part, that DIC benefits will be awarded to survivors of a deceased veteran where that veteran died:

> [N]ot as the result of the veteran's own willful misconduct, and who was in receipt of *or entitled to receive ... compensation at the time of death for a service-connected disability* rated totally disabling if

(1) the disability was continuously rated totally disabling for a period of 10 or more years immediately preceding death; [or]

(2) the disability was continuously rated totally disabling for a period of not less than five years from the date of such veteran's discharge or other release from active duty.

38 U.S.C. § 1318(b) (Supp. V 1999) (emphasis added).

The phrase "entitled to receive ... compensation," standing alone, provides no guidance as to whether the statute allows a hypothetical claim of total disability.[12] In other words, the statute is ambiguous. And the usual tools for resolution of that ambiguity push in opposite ways.

On the one hand, the legislative history of section 1318 appears to favor resolution of the ambiguity for the government. Thus the Senate report that accompanied the legislation stated in pertinent part that the legislation "would clarify Congression-

---

12. The government contends that the language of 38 U.S.C. § 1318 supports its reading, namely, that the use of the past tense in the statute (*i.e.*, that the veteran "was ... entitled to receive ... compensation at the time of death" for a service-connected disability that "was continuously rated totally disabling") bars a claim for DIC benefits based on the veteran's "hypothetical" eligibility for compensation for a totally disabling service-connected injury. We are not persuaded, as the government's argument proves too much. We note, for example, that the government's argument here would logically also preclude the filing of a claim for DIC benefits based on clear and unmistakable error ("CUE") in the initial rating decision. 38 C.F.R. § 3.22(b)(3) defines "entitled to receive" to mean in pertinent part that "[t]he veteran had applied for compensation but had not received total disability compensation due solely to [CUE] in a [Department of Veterans Affairs] decision...." 38 C.F.R. § 3.22(b)(3). But the use of the past tense does contribute to the statute's overall ambiguity.

The government also urges that section 1318 must be read in conjunction with 38 U.S.C. § 5101(a), which requires that "[a] specific claim ... must be filed in order for benefits to be paid or furnished to any individual...." 38 U.S.C. § 5101(a). The government directs our attention to *Jones v. West*, 136 F.3d 1296 (Fed.Cir.), *cert. denied*, 525 U.S. 834, 119 S.Ct. 90, 142 L.Ed.2d 71 (1998), wherein we held that section 5101(a) requires that "in order for a surviving spouse to be entitled to accrued benefits [owed the deceased veteran], the veteran must have had a claim pending at the time of his death for such benefits or else be entitled to them under an existing rating or decision." *Id.* at 1299. Relying on *Jones*, the government argues that survivors are accordingly ineligible for DIC benefits unless the veteran filed a "specific claim," 38 U.S.C. § 5101(a), for compensation for a totally disabling service-connected injury during his lifetime. We are not convinced. Section 5101(a) does not condition survivors' claims for DIC benefits on the veteran's prior filing of a claim, and *Jones* does not teach to the contrary.

al intent that the existence of clear and unmistakable VA administrative error would be a basis for entitlement to DIC benefits when such administrative error is the only bar to entitlement otherwise." S.Rep. No. 97–550, at 17 (1982), *reprinted in* 1982 U.S.C.C.A.N. 2877, 2880 (emphasis added). The Explanatory Statement of the Compromise Agreement for the legislation similarly states that the purpose of the insertion of the phrase "entitled to receive ... compensation" in the statute was:

> [T]o provide that the requirement that the veteran have been in receipt of compensation for a service-connected disability ... is met *if the veteran would have been in receipt of such compensation for such period but for a clear and unmistakable error regarding the award of a total-disability rating.*

Explanatory Statement of Compromise Agreement, 128 Cong. Rec. H7777 (1982), *reprinted in* 1982 U.S.C.C.A.N. 3012, 3013 (emphasis added). Given the difficulties of adjudicating initial or reopened claims many years after the relevant events, it may be unlikely that Congress intended to adopt the hypothetical claim approach adopted by the Court of Appeals for Veterans Claims in *Green, Wingo,* and *Carpenter.*

■ On the other hand, it is a well-established rule of statutory construction that when a statute is ambiguous, "interpretive doubt is to be resolved in the veteran's favor." *Brown v. Gardner,* 513 U.S. 115, 118, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994); *see also, e.g., King v. St. Vincent's Hosp.,* 502 U.S. 215, 220–21 n. 9, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991) (referring to "the canon that provisions for benefits to members of the Armed Services are to be construed in the beneficiaries' favor"); *McKnight v. Gober,* 131 F.3d 1483, 1485 (Fed.Cir.1997) ("Certainly, if there is ambiguity in the statute, interpretive doubt is

to be resolved in the veteran's favor.") (internal quotations omitted).

## V

■ Ordinarily at this juncture in the analysis where application of the usual canons of statutory construction push in opposite directions we would resort to the *Chevron* principle, which mandates that we defer to an agency's reasonable interpretation of an ambiguous statute. *Chevron,* 467 U.S. at 842–44, 104 S.Ct. 2778. While the parties do not argue the point, the Supreme Court has held that *Chevron* deference does not normally apply to informal rulemakings. In *Christensen v. Harris County,* 529 U.S. 576, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000), for example, the Supreme Court noted that agency interpretations of statutes that lack the force of law *i.e.,* that are not the product of formal adjudication or notice-and-comment rulemaking "do not warrant *Chevron*-style deference." *Id.* at 587, 120 S.Ct. 1655. This standard was recently clarified in *United States v. Mead Corp.,* —— U.S. ——, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001), where the Supreme Court stated:

> [An] administrative implementation of a particular statutory provision qualifies for *Chevron* deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority. Delegation of such authority may be shown in a variety of ways, as by an agency's power to engage in adjudication or notice-and-comment rulemaking, or by some other indication of a comparable congressional intent.

*Id.* at 2171; *see also Martin v. Occupational Safety & Health Review Comm'n,* 499 U.S. 144, 157, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991) (noting that interpreta-

tive rules are "not entitled to the same deference as norms that derive from the exercise of the [agency's] delegated law-making powers").

██ It is, of course, true that, while the revised regulation at issue is not entitled to *Chevron* deference, it is entitled to some deference under *Skidmore v. Swift & Co.*, 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944), given the Department of Veterans Affairs' "specialized experience" here and the "broader investigations and information" available to that agency. *Id.* at 139, 65 S.Ct. 161. And the degree of deference afforded the revised regulation hinges in turn on its "power to persuade." *Id.* at 140, 65 S.Ct. 161. But we need not decide whether *Skidmore* deference would be sufficient to support the government's interpretation, for 38 C.F.R. § 3.22, as revised, must be remanded to the agency for another reason. Without further explanation of § 3.22, it is inconsistent with the agency's interpretation of another virtually identical statute.

As noted above, both section 1311 and its counterpart, section 1318, use the same "entitled to receive" language when discussing a veteran's eligibility for benefits arising from a totally disabling condition and the survivors' corresponding eligibility for DIC benefits upon the veteran's death. In *Hix*, 225 F.3d at 1380, this court noted that the agency's implementing regulation for section 1311, 38 C.F.R. § 20.1106, provides that survivors' applications for DIC benefits "will be decided without regard to any prior disposition of those issues during the veteran's lifetime." In contrast, the revisions to 38 C.F.R. § 3.22 preclude the survivors from re-litigating the veteran's eligibility for disability benefits except in the case of clear and unmistakable error.[13] In short, the revised regulation challenged here appears to be inconsistent with 38 C.F.R. § 20.1106, though those regulations purport to interpret virtually identical language contained in related veterans' benefits statutes.

██ Under these circumstances, the agency is required to explain the rationale for its interpretation of section 1318. Though there are exceptions, *see Dewsnup v. Timm*, 502 U.S. 410, 415, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), it is a well-established rule of statutory construction that normally "identical words used in different parts of the same act are intended to have the same meaning." *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 570, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995) (quoting *Dep't of Revenue of Ore. v. ACF Indus., Inc.*, 510 U.S. 332, 342, 114 S.Ct. 843, 127 L.Ed.2d 165 (1994)). That rule applies with equal force where, as here, the words at issue are used in two different sections of a complex statutory scheme and those two sections serve the same purpose, namely, the award of DIC benefits to survivors.

To overcome this presumption that Congress intended the phrase "entitled to

---

**13.** 38 C.F.R. § 3.22 as revised expressly allows (in subsection (b)(3)) for the award of benefits in cases where the veteran's failure to qualify for compensation results from the VA's clear and unmistakable error in adjudicating the veteran's application. Petitioners in turn note that a survivor is never a "party" to a decision of the Board of Veterans' Appeals. *See* 38 C.F.R. §§ 20.1400(a), 20.1401(b). Thus, argue petitioners, survivors lack standing to file CUE claims for DIC benefits, and § 3.22(b)(3), in fact, is meaningless.

We do not agree. It is one thing to say that survivors may not pursue CUE claims to obtain a deceased veteran's accrued benefits. It is another to say that survivors lack standing to file CUE claims for new benefits, namely, the DIC benefits explicitly afforded to survivors under 38 U.S.C. § 1318. The government apparently concedes that 38 C.F.R. § 3.22(b)(3) trumps the Board of Veterans' Appeals regulations that would otherwise preclude survivors from filing CUE claims for DIC benefits under 38 U.S.C. § 1318.

receive" to have the same meaning in sections 1311 and 1318, the agency must explain the rationale for the different interpretations. And that explanation must be a reasonable one. *See, e.g., National Ass'n of Cas. & Sur. Agents v. Bd. of Governors of Fed. Reserve Sys.,* 856 F.2d 282, 287 (D.C.Cir.1988) (upholding different agency interpretations of same phrase when based on reasonable explanation), *cert. denied,* 490 U.S. 1090, 109 S.Ct. 2430, 104 L.Ed.2d 987 (1989); *Common Cause v. Fed. Election Comm'n,* 842 F.2d 436, 441–42 (D.C.Cir.1988) (where agency provides a reasonable explanation for interpreting the word "name" differently in separate sections of same statute, its construction is upheld).[14]

It may be that the agency can provide a reasonable explanation for its decision to interpret the virtually identical language of sections 1311 and 1318 in inconsistent ways. But it has not yet done so. We therefore remand 38 C.F.R. § 3.22 to the Department of Veterans Affairs for further consideration.

■■■ We further decide that the regulation will remain in effect during the Department of Veterans Affairs' further consideration of the January, 2001, revisions to 38 C.F.R. § 3.22. As the District of Columbia Circuit has previously noted, "[a]n inadequately supported rule ... need not necessarily be vacated." *Allied–Signal, Inc. v. United States Nuclear Regulatory Comm'n,* 988 F.2d 146, 150, 151 (D.C.Cir.1993) (remanding rule to agency without vacating "to develop a reasoned" explanation for its action). *See also, e.g.,*

*Checkosky v. Sec. & Exch. Comm'n,* 23 F.3d 452, 462–66, 306 U.S.App.D.C. 144 (D.C.Cir.1994) (separate opinion of Silberman, J.) (stating that agency's failure to provide satisfactory explanation does not necessarily mean that agency has acted contrary to APA; therefore, court has discretion not to vacate agency action pending agency's elaboration of its reasoning).

When "deciding whether to vacate an agency's decision pending further explanation," the District of Columbia Circuit considers "the seriousness of the order's deficiencies ... and the disruptive consequences of an interim change that may itself be changed." *A.L. Pharma, Inc. v. Shalala,* 62 F.3d 1484, 1492 (D.C.Cir.1995) (internal quotations omitted). The "disruptive consequences" of vacatur in this case lead us to conclude that the better course is to remand without vacating 38 C.F.R. § 3.22. *Id.* at 1492.

But even though we do not now invalidate the regulation, its validity is at this point open to question. Under these circumstances, we conclude that it would be inappropriate for the agency to further process claims under section 1318 until the validity or invalidity of the regulation is finally established. Accordingly we direct the Department of Veterans Affairs to stay all proceedings involving claims for DIC benefits under section 1318, whose outcome is dependent on the regulation in question, pending the conclusion of an expedited rulemaking in which the Department of Veterans Affairs: (1) will provide a reasonable explanation for its decision to interpret sections 1311 and 1318 in incon-

---

**14.** *See also, e.g., Motor Vehicle Mfrs. Assoc. v. State Farm Auto. Ins. Co.,* 463 U.S. 29, 48, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983) (noting that when an agency acts in a manner inconsistent with its prior conduct, it "must cogently explain why it has exercised its discretion" to reach that result, and that explanation must be "satisfactory"); *Atchison T. & S.F. Ry. Co. v. Wichita Bd. of Trade,* 412 U.S. 800, 808, 93 S.Ct. 2367, 37 L.Ed.2d 350 (1973) (noting that when an agency departs from "prior norms, ... [the basis for that departure] must be clearly set forth so that the reviewing court may understand the basis of the agency's action and so may judge the consistency of that action with the agency's mandate").

sistent ways; or (2) will revise 38 C.F.R. § 3.22 to harmonize that regulation with this court's interpretation of 38 C.F.R. § 20.1106 in *Hix v. Gober,* 225 F.3d 1377 (Fed.Cir.2000); or (3) will revise 38 C.F.R. § 20.1106 to be consistent with the revised version of 38 C.F.R. § 3.22. This expedited rulemaking is to be concluded by the Department of Veterans Affairs (subject to any petitions for reconsideration) within 120 days after the issuance of this court's mandate in this case. We remind the agency that if it wishes its interpretation of statutes to be afforded *Chevron* deference, its regulations should be promulgated using notice-and-comment procedures. If the agency pursues notice-and-comment procedures and cannot conclude them within 120 days after the issuance of our mandate, the agency may move this court for a reasonable extension of time.

## CONCLUSION

For the foregoing reasons, 38 C.F.R. § 3.22 (2000) is remanded for further consideration.

*REMANDED.*

## COSTS

No costs.